### RLI INSURANCE COMPANY v. AGENCY OF TRANSPORTATION, et al.

[762 A.2d 475]

No. 99-278

August 23, 2000. Plaintiff RLI Insurance Company appeals a Chittenden Superior Court order granting defendant's motion for summary judgment. RLI commenced this action requesting, in part, that the court enter a declaratory judgment that it had no duty to defend or to provide coverage for defendant Wayne Eells in a wrongful death suit. RLI argues that Eells was not an employee of the named insured, Champlain Valley Aviation, Inc. (CVA) within the meaning of the applicable insurance policy and hence was not covered. The superior court granted summary judgment to Eells. We affirm.

This case arises out of a mid-air collision at the Franklin County State Airport in Swanton, Vermont, between two planes owned by CVA. One plane was rented and operated by Charles Boyer, a student pilot. The other plane was rented and operated by Todd Taylor. Taylor's passengers were Sandra Irving and her ten-year-old son Andrew. Taylor, Irving, and her son died as a result of the collision. Irving's husband and surviving son filed a wrongful death claim against Boyer and others, including Eells, who was Boyer's flight instructor.

Eells demanded that RLI provide him with a defense and indemnification pursu-

ant to a commercial operator's insurance policy issued to CVA. The policy provides liability coverage to CVA as the named insured and insures CVA's employees for acts within the scope of their employment. The issue before us is whether the superior court erred in its determination on summary judgment that Eells was an employee of CVA. RLI contends that he was an independent contractor.

Our review of the court's decision is de novo. We use the same standard as the trial court and will therefore affirm a summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Granger v. Town of Woodford*, 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.); see also V.R.C.P. 56(c). In this case, the material facts are not in dispute. RLI conceded at oral argument that if Eells was an employee of CVA, he is entitled to coverage under the policy. Therefore, the case turns entirely on the legal determination of Eells' employment status with CVA.

We construe insurance contracts according to their terms and the parties' intent as implied by those terms. See *Utica Mut. Ins. Co. v. Central Vt. Ry.*, 133 Vt. 292, 295, 336 A.2d 200, 203 (1975). Because the policy does not define "employee," we assume the parties intended the word's ordinary meaning. See *Landry v. Dairyland Ins. Co.*, 166 Vt. 634, 635, 701 A.2d 1035, 1036 (1997) (mem.). In this context, an "employee" is defined in contrast to an "independent contractor."

When determining whether a worker is an employee or an independent contractor, we have relied on the "right to control" test. See *Reed v. Glynn*, 168 Vt. 504, 506, 724 A.2d 464, 466 (1998). If the party for whom the work is being done may prescribe the result, means and the methods by which the other shall do the work, an employee/employer relationship is established. See *id.* In this case, CVA was a full-service operation offering refueling, aircraft maintenance, tie downs, storage, airplane rental and flight instruction. CVA's president, Stewart Boyd, was not a licensed flight instructor; consequently, he retained Eells to offer flight instruction. Eells was responsible for certain aspects of instruction without control by CVA. Because Boyd was not a licensed flight instructor, he could not legally control the method of the instructional work performed by Eells. See 14 C.F.R. § 61.3 (2000) (only a certified flight instructor may give flight training or endorse an applicant for a pilot certificate). It is, of course, not unusual for an employer to hire an employee for unique skills that the employer lacks. For instance, a restaurant owner may employ a chef with the understanding that the owner will not control the method or means of cooking. CVA did, however, exercise control over Eells by scheduling his appointments with students and arranging for the airplane in which to conduct the instruction. This intermediate level of control does not clearly determine whether Eells was an employee or independent contractor.

Because our established "right to control" test does not clearly answer the question, we look to other factors to help analyze the nature of the employment relationship. The Restatement (Second) of Agency § 220 suggests several factors for determining employment status. Among those useful here are: whether the worker supplies his own tools and place of work, whether the method of payment is by time or by job, whether the work is part of the regular business of the employer, and what is the length of employment. See Restatement (Second) of Agency § 220 (1958). Consideration of these factors confirms the conclusion that Eells was an employee.

Where an employer provides a tool sufficiently valuable to create an incentive for control and efficient use of capital, this factor weighs heavily in favor of employ-

ment status. See *West v. C.A.M. Logging*, 670 A.2d 934, 938 (Me. 1996) (where company provided logging truck to driver, truck's value suggested employment status). The most important tool for flight instruction is the airplane itself, a very expensive tool. CVA, not Eells, supplied the airplane and the fuel and oil used. There is no evidence that Eells ever used any plane for instruction but those owned and provided by CVA. CVA exercised its control over these valuable tools by handling the scheduling of their time for use in flight instruction. The structure of CVA's flight lessons strongly suggests Eells was an employee.

If the work is neither ancillary nor independent of the employer's business, it is likely that the worker is an employee. See *North East Ins. Co. v. Soucy*, 693 A.2d 1141, 1145 (Me. 1997) (experienced roofer hired to help roofing contractor on large job was employee). CVA was a full-service operation that included flight instruction and aircraft rental. All flight instruction took place at CVA's place of business. CVA employed Eells and others to provide these integral services. Additionally, Eells participated in other tasks at CVA including opening and closing CVA, answering the phone, clerical duties, and mowing the lawn. These duties assigned to Eells were part of the regular business of CVA supporting the argument that he was an employee.

Whether the worker contracts with and collects money directly from third parties is indicative of his employment status. See *Falconer v. Cameron*, 151 Vt. 530, 532, 561 A.2d 1357, 1358 (1989) (where payment was made to employer who paid driver of leased truck percentage, driver was employee). Eells never contracted directly with third parties. Instead, Eells was to instruct all students that CVA acquired through its advertising or by referral. All fees for flight instruction, including the flight instructor's time,

were paid directly to CVA. Eells was then paid a percentage of the hourly tuition paid by student pilots to CVA. Because Eells' compensation was calculated by the number of hours he worked, he appears to have been paid "by time" rather than "by the job." The fact that Eells was paid by and through CVA and that pay was calculated by the time he worked adds weight to the argument that Eells was an employee.

The length of employment and the ability to terminate the relationship without liability may also help to differentiate between an employee and an independent contractor. See *Soucy*, 693 A.2d at 1144-45. Here, Eells had an ongoing relationship with CVA for a period of more than one year. He was not retained to instruct one student or one class. Instead, Eells provided instruction to any students acquired by CVA during his year of employment. Neither CVA nor Eells was barred from ending their relationship before any particular student finished instruction. This ongoing relationship of one year and the ability to terminate it also support the conclusion that Eells was an employee.

RLI argues that Eells was an independent contractor because the parties had an understanding that Eells was not to be an employee. This agreement was evidenced by the fact that Eells' income was reported to the IRS on Form 1099. Characterization as an independent contractor for tax purposes alone does not necessarily lead to a legal determination of employment status. See *Soucy*, 693 A.2d at 1145. The trial court found that it appeared that this arrangement was reached not to control the actual relationship of the parties, but as a way to avoid tax withholding. This factual finding is entitled to deference on appeal and will not be overturned unless clearly erroneous. See V.R.C.P. 52(a). On balance, the facts in this case indicate that Eells was an employee of CVA. Therefore, the court

did not err in granting summary judgment in favor of the defendant.

*Affirmed.*