2010 VT 114

## Debra Hathaway, Executrix of the Estate of Robert A. Hathaway, Jr., Individually, and On Behalf of the Next of Kin of Robert A. Hathaway, Jr. v. Paul H. Tucker and Casella Waste Management, Inc.

## Paul H. Tucker v. Old Republic Insurance Company v. Peerless Insurance Company

[14 A.3d 968]

No. 08-442

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 23, 2010

*Walter E. Judge, Jr.* of *Downs Rachlin Martin PLLC*, Burlington, for Third-Party Defendant and Fourth-Party Plaintiff-Appellant Old Republic Insurance Company.

*Stephen J. Soule* of *Paul Frank + Collins, P.C.*, Burlington, for Defendant-Appellant Casella Waste Management, Inc.

*Pietro J. Lynn, Robin A. Freeman, Jr.* and *Jeffrey S. Marlin* of *Lynn, Lynn & Blackman, P.C.*, Burlington, for Fourth-Party Defendant-Appellee Peerless Insurance Company.

¶ 1. **Dooley, J.** This case concerns the proper allocation of settlement costs between insurers following a wrongful death settlement. The death occurred in 2002, when Paul H. Tucker ("Tucker") was hauling waste for Casella Waste Management, Inc. ("Casella") and collided with Robert Hathaway's vehicle, killing Hathaway. Appellant, Old Republic Insurance Co. ("Old Republic"), challenges a grant of summary judgment in favor of Peerless Insurance Co. ("Peerless"), asserting that the trial court erred in concluding that: (1) Casella is not an insured under the Peerless policy;[1] (2) the Motor Carrier Act of 1980 does not require the reformation of the Peerless policy; and (3) the Old Republic policy extends to "employees" of Casella. Casella joins in appealing the second issue.[2] Old Republic additionally appeals from the court's decision that Peerless's insured, Tucker, was an employee of Casella, an appeal joined by Casella. We affirm.

---

[1] Old Republic argues that the superior court misconstrued the word "using" in the Peerless policy and, as a result, did not find Casella to be covered by that policy. In view of our disposition of the other questions in the appeal, the resolution of this issue will not affect our mandate, and we do not reach it.

[2] Where Casella has supported the position of Old Republic, we use the name Old Republic to refer to both it and Casella. Where Casella has made an independent argument, we use its name to identify the argument.

We note, however, that Casella's appearance here is difficult to understand. Casella has an indemnity judgment against Tucker which is not subject to this appeal. Otherwise the judgment, with respect to cross-claims, is solely between Peerless and Old Republic. Nevertheless, Casella filed a notice of appeal from four decisions of the superior court: (1) the decision that the failure of Peerless to include an MCS-90 endorsement in its policy did not result in the increase of its coverage limit to $750,000; (2) the decision not to award summary judgment to Old Republic on its claim that Tucker was not an employee of Casella; (3) the decision after taking evidence that Tucker was an employee of Casella; and (4) the denial of Casella's motion under V.R.C.P. 54(b) to enter immediate final judgment to it on its indemnity claim against Tucker. Of these issues, only the last involves the rights of Casella as a party, but Casella has apparently dropped it, not mentioning it in its brief. The first three involve the resolution of the claims between the insurers, claims to which Casella is not a party.

The right of Casella to appeal and to participate does not have to be determined in this appeal. Neither Peerless nor Old Republic have questioned Casella's right to participate in the appeal, and no issue on appeal will turn on this right because Casella has generally supported the positions of Old Republic. As noted, *infra*, however, the status of Casella is relevant to our mandate.

¶ 2. The material facts are not in dispute: Tucker is a trucker who owns and operates a hauling business. In April 1999, Tucker began working for Casella, primarily to haul bulk loads of liquid sewage waste. Tucker and Casella both considered Tucker to be a self-employed independent contractor. The arrangement between Tucker and Casella was based solely on various verbal agreements and an established course of dealing with each other. There were no real negotiations between the parties; Tucker simply accepted whatever arrangement Casella offered.

¶ 3. The Casella division for which Tucker worked employed an average of 24 company drivers and up to 24 subcontract-haulers. Most of the subcontract-haulers transported bulk solid waste for Casella along set routes and were paid by the load. Tucker was the only subcontract-hauler who primarily transported bulk sewage waste, and he was the only outside trucker for Casella who was paid on an hourly basis. Casella expected Tucker to be immediately available whenever it called. For most of the relevant period, Tucker spent 90% of his working time hauling for Casella, spending an average of 60-70 hours per week on the road for the company.

¶ 4. In 2000, Tucker bought a new 2001 Peterbilt tractor, which was equipped with the necessary hydraulics and built-in pumps to haul a 9000 gallon aluminum "vacuum" tanker trailer supplied by Casella. This trailer essentially became Tucker's primary trailer; in fact, no other Casella driver used it, and he often drove it home with him and left it in his driveway overnight. Casella did all of the necessary maintenance and repairs on the trailer, while Tucker was responsible for his tractor.

¶ 5. Casella communicated with Tucker primarily by calling his cell phone, sometimes several times a day. Typically, Casella would give Tucker his assignments by cell phone or voicemail the night before, but Casella frequently called Tucker to change the assignments "on the fly." Casella reimbursed Tucker for all of his job-related cell phone expenses, which were sometimes in excess of $500 per month.

¶ 6. All customers contacted Casella directly. Tucker had no role in making arrangements with customers, or in setting the rates or the cost of hauling loads. Casella paid for Tucker's Vermont licenses and permits to be a waste hauler. On his tax returns, Tucker listed all payment from Casella, and took his allowable deductions on Schedule C.

¶ 7. On June 24, 2002, Tucker was hauling waste for Casella, driving his 2001 Peterbilt tractor and pulling the Casella trailer, when he collided with Robert Hathaway's vehicle, killing Hathaway. Hathaway was turning his vehicle across the lane in which Tucker was attempting to pass him. The accident occurred in Whitehall, New York, as Tucker was driving back to Vermont from the disposal facility in Glen Falls, New York.

¶ 8. Hathaway's widow initiated this case personally and as executor of Hathaway's estate against Tucker and Casella. The complaint alleged that Casella was vicariously liable as Tucker's employer. The claims were settled through mediation, and the underlying liability and damage claims are no longer at issue in this case.[3] At the time of settlement, Tucker's acknowledged insurer, Peerless, and Casella's acknowledged insurer, Old Republic, both accepted responsibility for some portion of the settlement amount. The insurers apparently agreed to split the payment equally for purposes of completing the settlement with plaintiff, but preserved their own disputes about apportionment by way of third- and fourth-party cross-claims. Thereafter, Casella, who had paid a deductible to its insurer, Old Republic, cross-claimed against Tucker for indemnity. In a separate decision, the superior court ruled that Casella was entitled to indemnity from Tucker, and the separate indemnity judgment, in the amount of $500,000, was included in the judgment order resolving the cross-claims of the insurance companies.[4]

¶ 9. In January 2004, Peerless first filed a third-party declaratory judgment complaint against Old Republic alleging that Tucker was Casella's employee and therefore that Old Republic must defend and indemnify Tucker. Old Republic denied any such obligation, and filed a fourth-party complaint requesting an order that Peerless defend and indemnify Casella. Peerless answered and filed a counterclaim for declaratory judgment asserting that Tucker is entitled to primary coverage under both insurance

---

[3] According to Casella, the settlement was entered into between the plaintiff in the underlying case and the two insurance companies, and neither Casella nor Tucker was a party to the settlement.

[4] The indemnity judgment, and the question of which of the parties in this litigation will ultimately bear its cost, complicates a determination of the outcome of this appeal and the decisions in the superior court. This is addressed, *infra*, ¶ 39.

policies, and that Peerless can be held liable only for its proportionate share of coverage.

¶ 10. The dispute between insurers follows familiar lines. The trial court found that the settlement amount was approximately $1,000,000.[5] Peerless alleges that it and Old Republic both have primary coverage and must pay the cost of the settlement amount and costs of defense in proportion to their coverage limits. Since the coverage limit for Peerless is $500,000, and the coverage limit for Old Republic is $3,000,000, this resolution favors Peerless and has Old Republic paying most of the costs. Old Republic answers that its coverage is secondary, commencing only after Peerless's coverage is exhausted, and further that Peerless's coverage limit should be $750,000, not $500,000, because of a requirement of federal law. This resolution favors Old Republic because Peerless would pay the bulk of the costs.

¶ 11. Peerless's theory that the Old Republic policy extends primary coverage to Tucker is based on its argument that Tucker was actually an employee of Casella. As adopted by the trial court, the theory reaches this conclusion in the following way. In a section entitled "Who is an Insured," the Old Republic policy sets forth three main categories of insureds covered by the policy: "(a) You for any covered 'auto.' (b) Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . . . (c) Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." The policy's Business Auto Coverage Form defines "you" as referring to the "Named Insured shown in the Declaration." The first page of the declaration states that the "Named Insured" is "Casella Waste Systems, Inc.," but further says "See Form C." Form C contains a schedule of Named Insureds, which lists over one hundred companies including Casella Waste Management, Inc., the defendant in the underlying suit. It does not list a company in the name of Paul Tucker.[6] However, Form B, which immediately precedes Form C in the policy and is called the "Named Insured Summary" declares:

It is hereby agreed that the Named Insured on the Declarations shall include the following. . . . "All subsid-

---

[5] The settlement amount is officially confidential, but the trial court was able to determine its approximate amount.

[6] The superior court found that Tucker operated as a sole proprietor and never incorporated.

iaries, it's [sic] parent and affiliated organizations of each as are now, may be, or may have been, hereafter constituted; in addition, all officers, directors, shareholders, trustees, *employees*, while acting within the scope of their responsibility." (emphasis added).

Both Form B and C are, by the terms of the policy, "Forms Made a Part of the Policy at Time of Issuance."

¶ 12. As set out above, coverage with respect to a "covered auto" can have one of nine different meanings depending upon which is specified for the policy involved. For the Casella policy with respect to liability coverage, "any 'auto' " is a covered auto. The trial court further observed that the policy's "other insurance" provision extends primary coverage to "any covered 'auto' you own." Since Tucker owned the tractor involved in the accident, the court concluded that Old Republic was a primary insurer if Tucker was an employee acting within the scope of his responsibility.

¶ 13. Old Republic's primary response is that Tucker was not an employee of Casella, an issue we consider below. It also disputes, however, the theory adopted by the trial court to find coverage for Tucker under the Old Republic policy. Instead, it adopts a theory of coverage that makes its own coverage excess. Old Republic's responses involve construction of the insurance policy.

¶ 14. We construe insurance contracts to give effect to the parties' intent by looking at the plain language of the contract. *Northern Sec. Ins. Co. v. Doherty*, 2009 VT 27, ¶ 8, 186 Vt. 598, 987 A.2d 253 (mem.). We read "disputed terms" according to their "plain, ordinary and popular meaning." *Id.* (quotation omitted). We have held that "[i]nsurance policies and their endorsements must be read together as one document and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 20, 177 Vt. 215, 862 A.2d 251 (quotation omitted).

¶ 15. Old Republic has two main positions against the trial court's construction of its policy. First, it notes that the Named Insured — "you" in the policy — is intentionally defined using the singular, and that another endorsement contains a long list of insured entities, but does not mention Tucker. From this, it argues that the policy either contemplates one insured, Casella, or those in the list. These arguments are inconsistent with each other

because Old Republic acknowledges that the long list of entities controls over the singular definition, a result that is clear if we construe the policy and Form C together. Indeed, if we were to hold that there was only one named insured, it would be Casella Waste Systems, Inc., a Casella company that was not sued in this litigation. More importantly, we find no inconsistency between Form C and Form B, the "Named Insured Summary" relied upon by the trial court. The former is a list of business companies, apparently affiliated with Casella. The latter states the affiliation rule generally, but adds certain persons who are part of these companies as officers, directors, shareholders, trustees and employees. The addition of a list of types of affiliated persons to the list of affiliated companies is entirely consistent, reflecting the fact that these persons are frequently sued along with the companies. Again, harmonizing all parts of the policy, we agree with the trial court that we must give effect to the "Named Insured Summary."

¶ 16. Old Republic's second argument against giving effect to the "Named Insured Summary" is that it creates an internal inconsistency in the policy with respect to who is an insured. Section II(A)(1)(a)-(c) of the policy lists "insureds" under the heading "WHO IS AN INSURED." The first insured on this list is "you for any covered 'auto,'" the category relied upon by the trial court. The second insured is "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow except . . . [y]our 'employee' if the covered 'auto' is owned by that 'employee' . . . ." Old Republic argues that by virtue of the exception, an employee is not an insured while using a covered auto the employee owns, the situation present here. Since the "Named Insured Summary" produces a result contrary to the "WHO IS AN INSURED" section, Old Republic argues that the "Named Insured Summary" cannot have the effect given by the trial court.

¶ 17. Assuming there is an inconsistency, Form B is in the nature of an added endorsement, which adds to the list of insureds. As we held in *Fireman's Fund*, we must read the policy provisions and any endorsements together, but give effect to any alteration brought about by the endorsement. 2004 VT 93, ¶ 20. Thus, "the endorsement modifies, to the extent of the endorsement, the terms and conditions of the original insurance contract." 4 E. Holmes, Holmes' Appleman on Insurance § 20.1, at 154 (2d ed. 1998). Here, Form B states that "[i]t is hereby agreed that

the Named Insured on the Declarations shall include the following" and goes on to include employees while acting within the scope of their responsibility. The modification brought about by Form B is explicit, and we must hold that it controls. Therefore, we agree with the trial court's reasoning in finding that the Old Republic policy extends coverage to Tucker if he was an employee of Casella at the time of the accident.

¶ 18. We also agree with the trial court that the result of its analysis is that both the Peerless and Old Republic policies provide primary liability coverage and that payment of the settlement amount and defense costs should be allocated between the carriers in proportion to their coverage limits. Having held above that the Old Republic policy extends primary coverage to Tucker, if an employee, we note that Peerless admits that Casella, as Tucker's employer, is entitled to primary coverage under its policy as well. Thus, as the trial court here concluded, both insurance policies provide primary coverage, and the allocation of coverage between the two policies is governed by the policies' identical "other insurance" clauses, which set forth a percentage-based formula according to the policy limits.[7]

¶ 19. Old Republic argues that we should reject this conclusion based upon other language in the policy. It relies on a provision in the "other insurance" clause which provides:

> For any covered "auto" you own, this Coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:
>
> > (1) Excess while it is connected to a motor vehicle you do not own.
> >
> > (2) Primary while it is connected to a covered "auto" you own.

---

[7] The policies identically provide:

When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Old Republic argues that the Peerless policy provides primary coverage under subsection (2) for Tucker's tractor, while Old Republic's coverage is excess under subsection (1) for Casella's trailer. This argument rests on the assumption that Tucker is not included as a named insured ("you") under the Old Republic policy. We have already rejected this argument. We are left, then, as the trial court correctly concluded, with two identical "other insurance" clauses that both provide primary coverage to Tucker and Casella.

¶ 20. The Peerless policy has a $500,000 limit of insurance, and the Old Republic policy has a $3,000,000 limit of insurance, for total coverage of $3,500,000. By allocating on a pro rata basis, the trial court thus found Peerless liable for 1/7 of the total of all expenses and settlement costs and found Old Republic liable for the remaining 6/7.

■ ¶ 21. The same allocation result follows under settled case law. Where identical clauses both provide primary coverage, they are in effect mutually repugnant. *Fireman's Fund*, 2004 VT 93, ¶ 22. As a result of the mutually repugnant "other insurance" clauses, the insurers must share coverage on a pro rata basis. See *State Farm Mut. Auto Ins. Co. v. Powers*, 169 Vt. 230, 237, 732 A.2d 730, 735 (1999) (explaining that when multiple insurers both provide primary coverage, the coverage should "be apportioned among the insurers on a pro rata basis").

¶ 22. We next move on to Old Republic's argument that Tucker was not Casella's employee at the time of the accident. The superior court decided that it could not determine whether Tucker was an employee based on the cross-motions for summary judgment and held an evidentiary hearing on the question. Based on the evidence, it determined that Tucker was an employee. In reviewing the trial court's ruling, "we will not disturb the court's findings of fact and conclusions of law unless, taking the evidence in the light most favorable to the prevailing party, they are clearly erroneous." *Cab-Tek, Inc. v. E.B.M., Inc.*, 153 Vt. 432, 434, 571 A.2d 671, 672 (1990).[8] We will thus affirm the trial court's legal

---

[8] Old Republic argues that all issues raised in this appeal should be reviewed de novo, including the determination of Tucker's employment status. Old Republic cites *RLI Ins. Co. v. Agency of Transp.*, 171 Vt. 553, 554, 762 A.2d 475, 477 (2000) (mem.), as holding that employment status is determined de novo. In fact, the decision involves review of a summary judgment decision, which always mandates

conclusion concerning Tucker's employment status if it is reasonably supported by the findings. *Falconer v. Cameron*, 151 Vt. 530, 532, 561 A.2d 1357, 1358 (1989).

¶ 23. To determine whether a worker is an employee or an independent contractor, we rely primarily on the "right to control" test. *RLI Ins. Co. v. Agency of Transp.*, 171 Vt. 553, 554, 762 A.2d 475, 477 (2000) (mem.); see also *Crawford v. Lumbermen's Mut. Cas. Co.*, 126 Vt. 12, 18, 220 A.2d 480, 483 (1966); *Kelley's Dependents v. Hoosac Lumber Co.*, 95 Vt. 50, 53, 113 A. 818, 820 (1921) (explaining that "the master test is the right to control the work"). Under this test, a worker is an employee if "the party for whom work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work." *Kelley's Dependents*, 95 Vt. at 53, 113 A. at 820.

¶ 24. Applying the "right to control" test, the trial court found that Tucker was Casella's employee because Casella had the right to control the end result as well as the details, manner, and means of Tucker's work. The court noted that Tucker's situation was unique because he was the only subcontractor for Casella who primarily transported bulk liquid sewage waste. The timing of pickup and delivery was more critical for Tucker's routes than for those involving the transport of solid waste and, as a result, Casella provided more intensive "on the fly" management and direction to Tucker than to other independent drivers. Casella also paid Tucker by the hour because his routes and assignments were less predictable and required more day-to-day flexibility. Casella expected Tucker to be immediately available whenever it called. Casella also had the authority to direct Tucker to take an alternate route, and to end his day without making the delivery, even if it was not the most efficient means of discharging that day's assignments.

¶ 25. As we discuss below, both Casella and Old Republic urge us to adopt a different legal standard than that used by the trial court. First, however, we address Old Republic's argument that even if the right-to-control test sets the standard for our decision, the trial court applied it improperly. Old Republic asserts that

---

de novo review. Here, we are reviewing findings and conclusions based upon an evidentiary hearing.

Casella did not control the "means and methods" of Tucker's work, but specified only where and when Tucker was to pick-up and deliver waste. Old Republic notes that Tucker had the freedom to accept or decline assignments, haul for others, and choose his own travel routes. In these circumstances, it asserts, Casella did not have the right to control the means and methods of Tucker's work.

¶ 26. We recognize that the evidence before the court raised inferences for and against the proposition that Tucker was an employee of Casella. Nevertheless, the superior court made specific findings on how Casella controlled the means and methods of Tucker's work. These findings are not clearly erroneous and support the court's conclusion that Casella had a right to control the means and methods of Tucker's work and did so on a number of occasions. We must therefore uphold the court's decision. See *Falconer*, 151 Vt. at 533, 561 A.2d at 1358-59 (affirming trial court's judgment where its findings "support[ed] the legal conclusion that an employer-employee relationship existed"). We cite *Falconer* in particular because the facts of that case, which was decided under the right-to-control test, are similar to those in this case.

¶ 27. Casella and Old Republic both argue that the trial court used the wrong standard to determine that Tucker was an employee of Casella. Casella urges us to put less emphasis on the right-to-control test because of the context in which the issue arises and because the intent of the parties — that is, Casella and Tucker — was to create an independent contractor relationship and not an employer/employee relationship. Specifically, Casella argues that the court should look primarily to what risks the insurance companies contemplated when drafting their policies. Casella maintains that this would serve the public policy of holding insurance companies responsible for the coverage obligated by their policies, whereas the policy rationale that underlies the common law right-to-control test is inapplicable to disputes between insurance companies.

¶ 28. We do not find this argument to be persuasive. We acknowledge the importance of holding insurance companies responsible to their policy holders. See *American Protection Ins. Co. v. McMahan*, 151 Vt. 520, 522, 562 A.2d 462, 464 (1989) ("Insurance contracts are construed according to their terms

and . . . [w]hen the language is ambiguous, the ambiguity is resolved in favor of the insured party."). Nevertheless, we have construed the term "employee," as used in an insurance policy, according to its ordinary meaning, and have applied the right-to-control test to determine an insured's employment status. See *RLI*, 171 Vt. at 554, 762 A.2d at 477 (construing "employee" as used in insurance policy according to its "ordinary meaning" and applying the common law "right to control" test to decide the question); *Crawford*, 126 Vt. at 17, 220 A.2d at 483 (construing the term "employee" in insurance policy according to common law right-to-control test, which is a "safe guide"); see generally 9A L. Ross & T. Segalla, Couch on Insurance § 129:13, at 129-31, 129-32 (3d ed. 2005) (in construing insurance policy the term "employee" is defined according to the common law under the right-to-control test). We must do so here.

■ ¶ 29. Similarly, we do not find persuasive Casella's argument that we are bound by the label put by Casella and Tucker on their relationship and that upholding the superior court conclusion will eliminate all independent contractor drivers in the trucking industry. As we discuss below, the intent of the parties is a relevant consideration, but is hardly determinative. The parties to a work relationship can determine the elements of that relationship, as they did here, but we must decide the legal effect of the relationship the parties established. See *Kirk v. Yarmouth Lime Co.*, 15 A.2d 184, 187 (Me. 1940) ("One might actually intend to enter into an independent contractual relationship and still the terms of employment be such that the law would determine his status as that of an employee.").

■ ¶ 30. Casella has blown the narrow decision of the superior court out of proportion to greatly overstate its likely consequences.[9] The trial court found Tucker's situation unique among the drivers who haul waste for Casella. Based on those unique circumstances, it found Tucker to be an employee of Casella. As we stated many years ago, "it is extremely difficult, if not impossible, to make a statement of definite facts by which the status of a given person can unfailingly be determined." *Kelley's*

---

[9] Old Republic similarly has exaggerated the impact of the superior court decision: "[u]nder the . . . reasoning of the trial court, independent haulers would cease to exist under the law." We do not find this broad assertion to be accurate.

*Dependents,* 95 Vt. at 53, 113 A. at 820. That observation applies here.

■■ ¶ 31. Old Republic argues that the correct standard for determining whether Tucker was an employee is that set forth in § 220 of the Restatement (Second) of Agency, and that test would produce a different result. The Restatement sets out a general standard for determining whether a person is a servant: "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Restatement (Second) of Agency § 220(1) (1958). The section goes on to list a number of factors to distinguish between an employee and an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and

   (j) whether the principal is or is not in business.

*Id.* § 220(2)(a)-(j). Old Republic argues that we adopted this section in *RLI Insurance Co.* However, *RLI* presented a special case because the worker involved was a licensed flight instructor and the airport operation company which paid him did not employ another licensed flight instructor who could lawfully supervise the worker's methods of instruction. This Court recognized that in those circumstances the right-to-control test could not be definitive and turned to the Restatement section for other factors. *RLI Ins. Co.*, 171 Vt. at 554, 762 A.2d at 477; see also *Reed v. Glynn*, 168 Vt. 504, 507, 724 A.2d 464, 466 (1998).

■ ¶ 32. We do not read *RLI* as abandoning the right-to-control test where it can be applied, as here. Indeed, the general standard in § 220(1) is the right-to-control test, and the first factor in § 220(2)(a) is a further explanation of the right-to-control test. In essence, the remaining Restatement factors are supplementary to the right-to-control test, particularly in a close case.

■ ■ ¶ 33. In relying upon the Restatement factors, Old Republic focuses on three, alleging that Tucker supplied a principal "instrumentality" of the work, his tractor; that Tucker claimed his compensation for tax purposes as an independent contractor; and that both parties "believed" that they were creating an independent contractor relationship. Despite adhering to the right-to-control test, the trial court examined these factors, as well as others under the Restatement, and found they did not change the result considering the totality of the facts and circumstances. See *Fotinopoulos v. Dep't of Corr.*, 174 Vt. 510, 512, 811 A.2d 1227, 1230 (2002) (mem.) ("Determining whether a work relationship constitutes an employer/employee relationship must be done on a case by case basis." (quotation omitted)). For example, Old Republic emphasizes that Tucker owned his truck, a factor in its favor. But the weight of this factor is undercut by the fact that Casella also supplied an important piece of equipment, the trailer, which Tucker used almost exclusively, and Casella paid for a coupler on the tractor to connect it with the trailer. Regardless of Tucker's tax filings, Tucker's hourly compensation suggested that he was more akin to an employee. See *RLI Ins. Co.*, 171 Vt. at 555, 762 A.2d at 478 ("Characterization as an independent contractor for tax purposes alone does not necessarily

lead to a legal determination of employment status."); see also *Crawford*, 126 Vt. at 18, 220 A.2d at 484 (explaining that the fact that worker was paid by the completed unit and not by the hour was an "important index" that the worker was an independent contractor). We recognize that the evidence showed that Casella and Tucker intended an independent contractor relationship, but this factor is present in virtually every case this Court has decided on this subject and is rarely found to be determinative. See *Falconer*, 151 Vt. at 533, 561 A.2d at 1359 (holding that "lease agreement" label does not control relationship). It is only one factor in the Restatement list.

¶ 34. In addition, a number of the Restatement factors suggest that Tucker was the employee of Casella. For example, Tucker performed waste transport for Casella for three years and worked virtually full time for Casella. See Restatement § 220(2)(f). He was paid by the hour and not by the job. See *id.* § 220(2)(g). His work was part of the regular business of the employer. See *id.* § 220(2)(h). Even if we were to consider all the Restatement factors and exclude the right-to-control factor, we would still conclude that sufficient factors support the trial court's decision that Tucker was Casella's employee. Ultimately, we conclude that the right-to-control test, used along with the other Restatement factors, strongly supports the conclusion that Tucker was an employee.

¶ 35. As a final argument with respect to the superior court's conclusion that Tucker was an employee of Casella, Old Republic asserts that the doctrine of quasi-estoppel precludes Peerless from arguing that Tucker is an employee of Casella because Tucker represented to the IRS that his income from Casella was through a sole proprietorship. Assuming that we would recognize the doctrine of quasi-estoppel,[10] it is inapplicable here because Tucker is not intentionally attempting to change his employment status to reap a benefit; rather Peerless — a third party — is asserting that Tucker must be considered an employee in this dispute between insurers. See *Sowinski v. Walker*, 198 P.3d 1134, 1147 (Alaska 2008) ("quasi-estoppel precludes a party from

---

[10] The doctrine of quasi-estoppel is related to the doctrine of judicial estoppel. We have been requested to adopt judicial estoppel, but have not decided whether to do so. See *In re Chittenden Solid Waste Dist.*, 2007 VT 28, ¶ 29, 182 Vt. 38, 928 A.2d 1183; *Gallipo v. City of Rutland*, 173 Vt. 223, 237, 789 A.2d 942, 953 (2001).

taking a position in litigation that is inconsistent with a position taken earlier by *that same party*") (emphasis added).

¶ 36. Old Republic finally contends that the federal requirement known as an MCS-90 endorsement should be incorporated into Peerless's policy as a matter of law. Although this argument was raised primarily to decrease the amount of excess coverage Old Republic was required to extend if Tucker were not found to be an employee of Casella under the Old Republic policy, it would, if accepted, slightly increase Peerless's share of the settlement costs even where Tucker is found to be an employee.[11] There was no such endorsement in the Peerless policy, and all parties agree that Tucker should have had this endorsement as part of his policy with Peerless. Old Republic claims that Peerless knew or should have known that Tucker was engaged in interstate trucking, and therefore required the MCS-90 endorsement, and, as a result, the policy must be reformed to conform to the federal requirement. Old Republic assumes that reforming the policy would increase the coverage limit of the Peerless policy from $500,000 to $750,000 (the statutory minimum) and would therefore increase Peerless's share of the settlement. See 49 U.S.C. § 31139(b)(2) ("The level of financial responsibility established under paragraph (1) of this subsection shall be at least $750,000."). The trial court found, as a preliminary matter, that reforming the Peerless policy to incorporate the MCS-90 endorsement would not increase the coverage limit from $500,000 to $750,000, and thus would have no bearing on the question of apportionment between insurers.

¶ 37. We agree with the trial court that Peerless's coverage limit is not raised to $750,000, but we ground our decision on the alternative rationale that the federal law has no application in disputes between insurers over the allocation of recovery and defense costs. This is the explicit holding of *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 31.

¶ 38. Old Republic argues that we should not apply that holding here for two reasons. First, it asserts that *Fireman's*

---

[11] Based on the coverage limits in the policies — $500,000 for Peerless, $3,000,000 for Old Republic — the superior court held that Peerless was responsible for 14.3% ($500,000/$3,500,000) of the settlement and Old Republic was responsible for 85.7% ($3,000,000/$3,500,000). Old Republic argues that Peerless's limit should be $750,000 as a result of the federal law. If this argument is accepted, Peerless's share of the settlement becomes 20% ($750,000/$3,750,000).

*Fund* involved a dissimilar situation in which the trucker's insurance carrier included an MCS-90 endorsement in its policy and the argument was whether the endorsement made the carrier's policy primary and not excess. It argues that its holding should not apply where the trucker's carrier has failed to include the endorsement at all, despite knowing that it was insuring the liability of a trucker who was engaged in interstate commerce. We disagree that the holding of *Fireman's Fund* is so limited. In both this case and *Fireman's Fund*, an insurer is attempting to use the requirements of the federal law to argue that it should pay less, and another insurer should pay more, of the cost of a predetermined liability settlement or judgment. *Fireman's Fund* explains that the purpose of the federal law is to ensure there is financial responsibility to pay the damages of a person injured by the action of the trucker, and not to allocate liability or defense costs between insurers once the injured party is paid. Old Republic is trying to use the federal law requirements for the purpose that *Fireman's Fund* prohibits. Although there are differences between the circumstances here and those in *Fireman's Fund*, the rationale of that decision applies equally here. The superior court was correct to apply the holding of *Fireman's Fund*.

¶ 39. Old Republic's second reason attempts to fit within the rationale of *Fireman's Fund*. It argues that a member of the public — that is, Casella — is adversely affected by the failure of Peerless to include the MCS-90 endorsement in its policy so the policy must be reformed to respond to Casella's need and only incidentally to help Old Republic. Old Republic asserts that Casella is adversely affected by the lack of a MCS-90 endorsement in the Peerless policy because the $500,000 coverage limit in that policy will prevent Casella from collecting all of its indemnity judgment from Peerless. See *supra*, ¶ 8. The short answer is that Old Republic has raised this argument for the first time on appeal — in fact first in its reply brief — and therefore we decline to reach it for lack of preservation.[12] *Gravel v. Gravel*, 2009 VT 77, ¶ 12, 186 Vt. 250, 980 A.2d 242. Accordingly, we affirm the trial

---

[12] This argument was also raised by Casella, and we reject it for the same reason. We note, in addition, that Casella received an indemnification judgment for $500,000 against Tucker and the judgment also explains that the $500,000 judgment is owed to Casella by Peerless, subject to participation by Old Republic. Thus, even if we were to accept this theory of public loss, and the ability of Old Republic to benefit from it, the record does not support it.

court's ruling that MCS-90 does not require reformation of the Peerless policy.

¶ 40. We have addressed above each of the issues directly raised on appeal, but we note that, in the course of the argument, the parties stated different understandings with regard to the ultimate effect on the payment obligations of the insurers of the indemnity judgment Casella obtained against Tucker. We note that no party appealed from this part of the superior court judgment, and accordingly we do not address it.

*Affirmed.*