NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 58

No. 2017-112

| | |
|---|---|
| Joanne Perrault | Supreme Court |
| | |
| | On Appeal from |
| v. | Commissioner of Labor |
| | |
| Chittenden County Transportation Authority | September Term, 2017 |

Lindsay H. Kurrle, Commissioner

Christopher McVeigh of McVeigh Skiff, LLP, Burlington, for Plaintiff-Appellant.

Jennifer K. Moore and Christina Rainville of Ellis Boxer & Blake PLLC, Springfield, for Defendant-Appellee.

PRESENT: Skoglund, Robinson, Eaton and Carroll, JJ., and Burgess, J. (Ret.), Specially Assigned

¶ 1. **CARROLL, J.** Claimant Joanne Perrault appeals the Commissioner of Labor's decision on summary judgment denying her workers' compensation benefits. On appeal, claimant argues that she was an employee of defendant Chittenden County Transportation Authority (CCTA) for the purposes of workers' compensation and, therefore, is entitled to benefits. We hold that, because claimant did not receive wages, she cannot be considered a statutory employee as that term is defined for the application of workers' compensation. We accordingly affirm.[1]

---

[1] Claimant filed a supplemental citation under Vermont Rule of Appellate Procedure 28(j) after oral argument in this case that referenced this Court's recent decision in Lyons v. Chittenden Central Supervisory Authority, 2018 VT 26, __ Vt. __, __ A.3d __. CCTA subsequently filed a motion requesting that this Court strike portions of claimant's supplemental citation as argument. See V.R.A.P. 28(j) (explaining supplemental citation "must state without argument the reasons for

¶ 2.    The following facts are undisputed.  CCTA provides a variety of public transportation services within its operating region, including bus service.  CCTA also runs a program that provides transportation to medical, social services, and other appointments for eligible riders living outside CCTA's regular bus routes.  This program relies on "volunteer" drivers to use their personal vehicles to transport riders.  CCTA provides insurance on drivers' vehicles on a secondary basis and encourages drivers to carry more than the minimum required insurance and to name CCTA as an additional insured on their personal vehicle insurance policies. Drivers in this program are required to meet standards set by CCTA and are subject to certain restrictions, which are similar to the restrictions governing CCTA's regular drivers.  For example, all CCTA drivers, whether in the volunteer program or otherwise, are required to participate in trainings, are subject to discipline including dismissal, and must undergo a background check. Drivers in the volunteer program are required to refrain from smoking and using handheld devices while driving, must keep a home telephone and report traffic tickets to CCTA, and may not discuss politics with riders.

¶ 3.    Potential volunteer drivers must complete an application, which includes the background check mentioned above.  CCTA also performs a vehicle inspection on potential volunteer drivers' vehicles.  Once through the application process, a volunteer driver is governed by CCTA's volunteer manual.  This manual, in addition to explaining the restrictions and requirements discussed above, also states that the manual should not be understood to mean that any employment contract exists between CCTA and the volunteer driver.  The manual directs volunteer drivers to record and submit to CCTA the time that they spend waiting for riders. Drivers are also directed to submit a record of miles driven to CCTA; specifically, drivers are directed to

_____

the supplemental citations").  CCTA's motion does not identify specific statements that should be stricken as argument.  We grant CCTA's motion to the extent that claimant's supplemental citation argues that this Court's decision in <u>Lyons</u> mandates a particular outcome here.  But to the extent that claimant's supplemental citation identifies language in <u>Lyons</u> relevant to the issues in this case, CCTA's motion is denied.

record mileage from the time a driver leaves his or her home until the driver returns to his or her home. Drivers receive money from CCTA based on the miles driven in a given period and calculated at the federal mileage rate. The CCTA manual refers to this monetary payment as reimbursement and states that CCTA will perform random checks to verify the accuracy of mileage submissions. This is the only monetary or other exchange between CCTA and drivers in the volunteer program.

¶ 4. Claimant applied to be a driver in CCTA's volunteer program in 2014. She wrote in her application that her volunteer work as a guardian ad litem was her only work at the time, that she had spent "[t]oo much time as volunteer w/o pay," and that she "[n]eed[ed] [a] little extra." Claimant was accepted as a driver with the volunteer program on July 10, 2014. During her time as a driver for CCTA, claimant received an average of $265.49 per week from CCTA, calculated on the basis of claimant's mileage at the federal mileage rate. This amount became part of claimant's regular, weekly household budget.

¶ 5. On December 1, 2015, claimant had an automobile accident. At the time of the accident, she was driving a CCTA rider to an appointment. Claimant sustained significant injuries in the accident, including a broken neck at the third and fourth vertebrae, a fractured spine, and broken ribs. She subsequently sought workers' compensation benefits.

¶ 6. CCTA filed a motion for summary judgment with the Department of Labor regarding claimant's status as an "employee" for purposes of a workers' compensation award, which the Commissioner granted, determining that claimant could not be considered an employee of CCTA, and thus was ineligible for workers' compensation benefits. The Commissioner's decision turned on the conclusion that the per mile payment claimant received from CCTA constituted reimbursement, which the Commissioner concluded does not fall within the statutory definition of wages, and that without wages, claimant was a gratuitous volunteer rather than an employee. Claimant appealed this decision and the Commissioner certified the following question

3

for this Court's review: "As a matter of law, was Claimant an employee of Defendant, as defined in 21 V.S.A. § 601(14), at the time of her December 1, 2015 injury?"

¶ 7. The question certified in this case presents an issue of pure law, which this Court considers de novo. When we consider the meaning of a statute, "our paramount goal is to give effect to the Legislature's intent." Haller v. Champlain Coll., 2017 VT 86, ¶ 10, __ Vt. __, 177 A.3d 497 (quotation and alterations omitted). That said, within the context of workers' compensation, "absent a compelling indication of error," we will defer to the Commissioner's interpretation and application of the statutory framework. Lydy v. Trustaff, Inc., 2013 VT 44, ¶ 4, 194 Vt. 165, 76 A.3d 150 (quotation omitted). Our review of the Commissioner's interpretation and application is guided by the purpose of Vermont's workers' compensation laws, which are "remedial in nature and must be liberally construed to provide injured employees with benefits unless the law is clear to the contrary." St. Paul Fire & Marine Ins. Co. v. Surdam, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991). Accordingly, "we will not affirm an interpretation that is unjust or unreasonable." Clodgo v. Rentavision, Inc., 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997).

¶ 8. Claimant's argument on appeal begins with her interpretation of the definitions of employee and employer for purposes of workers' compensation. She argues that her relationship with CCTA bears all the indicia of an employment relationship, including satisfaction of the wage requirement, and that the Commissioner erred by granting CCTA summary judgment because the record included disputed material facts regarding whether claimant was a CCTA employee. See V.R.C.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). She argues that the question of whether she can be considered an employee was properly a jury question because, first, the CCTA manual is ambiguous, and its disavowal of an employment relationship between CCTA and volunteer drivers should not be dispositive on the employment question, and second, that she intended CCTA's mileage payments to serve as wages, an intent

4

which CCTA was aware of and did not rebut at the time claimant filed her application. She also suggests that the Commissioner erred by not considering whether her relationship with CCTA met the criteria of any one of several tests of employment, including the nature of the business test and the right to control test.

¶ 9. Claimant's argument that the record included disputed material facts rests on a faulty premise—the question of whether an employment relationship exists, and whether therefore a party can be considered a statutory employer or employee for purposes of workers' compensation, does not turn on whether a common law, contractual employee-employer relationship exists between the parties. Thus, neither the volunteer manual, even if it was considered dispositive on CCTA's intent to form an employment relationship, nor claimant's intent to consider payments received from CCTA as wages controls the outcome here. Given our decision, discussed below, that CCTA's mileage payments are reimbursement and fall outside the category of wages, which is a threshold element to find a statutory employment relationship under the first prong of the workers' compensation definition of employee, the Commissioner correctly ruled that there were no disputed material facts and, as a matter of law, claimant was not a statutory employee for purposes of workers' compensation.

¶ 10. The basic workers' compensation entitlement is found in 21 V.S.A. § 618(a)(1): "If a worker receives a personal injury by accident arising out of and in the course of employment by an employer subject to this chapter, the employer or the insurance carrier shall pay compensation in the amounts and to the person hereinafter specified." Worker and employer are each defined by statute; a worker, or employee, is "an individual who has entered into the employment of, or works under contract of service or apprenticeship with, an employer."[2] Id. § 601(14); see also id. § 601(3) (defining employer).

---

[2] Claimant argues generally that she was "an employee" of CCTA. In this respect, claimant's argument agrees with the question certified by the Commissioner, which asks whether claimant can be considered "an employee" for purposes of workers' compensation. But as noted,

¶ 11. In general, a statutory employer cannot be relieved of workers' compensation liability—"[a]n employer shall not be relieved in whole or in part from liability created by the provisions of this chapter by any contract, rule, regulation, or device whatsoever." Id. § 625. But see id. § 601(14)(H) (permitting corporation or LLC to forego purchasing workers' compensation insurance with Commissioner's approval where all corporate officers or LLC managers or members elect to be excluded from workers' compensation coverage; organization has no more than four officers, managers, or members; and organization has no employees). Thus, an employer's disavowal of an employment relationship, whether because the employer did not intend to enter such a relationship or on some other grounds, cannot work a reversal on a statutory employee's right to workers' compensation benefits if, as a matter of law, a statutory employment relationship exists. See Hathaway v. Tucker, 2010 VT 114, ¶ 29, 189 Vt. 126, 14 A.3d 968 ("The parties to a work relationship can determine the elements of that relationship, . . . but we must decide the legal effect of the relationship the parties established."); Falconer v. Cameron, 151 Vt. 530, 533, 561 A.2d 1357, 1359 (1989) (holding trucking company was driver's employer for purposes of workers' compensation despite lease agreement under which driver was "private owner operator" and by which company intended to avoid employment relationship). For this

_____

the statutory definition of a worker or employee has three separate clauses, allowing for a person to be an employee either because the person has entered the employment of an employer, works under a contract of service, or is an apprentice. Because claimant has not argued that any contract of service existed between the parties or that she could be considered an apprentice, our decision is limited to the first clause of the definition of employee—that claimant "entered into the employment of" CCTA. Thus, we consider only an employment relationship for purposes of determining whether claimant was an employee under this prong of the statutory definition. We do not consider whether claimant could be considered an employee under either the second or third clauses of the statutory definition, and our decision should not be read to imply that the same characteristics are necessary to find a workers' compensation claimant an employee under either the contract of service or apprenticeship prongs of the definition. That said, a plurality of this Court recently held that employment under the "contract of service" provision of the statutory definition of employee shares the wage requirement that we hold necessary in this case to find an employment relationship under the first statutory provision. Lyons, 2018 VT 26, ¶¶ 18, 20 (plurality opinion) (stating "[t]here is no dispute that, apart from the issue of wages, there is present here a contract for service, as required in § 601(14) to find claimant was an employee or worker" and that "claimant must prove that she received wages").

reason, any ambiguity in CCTA's volunteer manual, including the manual's express statement disavowing an employment relationship, would not preclude a statutory employment relationship or a workers' compensation award if the elements of that relationship were otherwise in place.

¶ 12.    The converse is likewise the general rule—a statutory employee cannot disclaim a workers' compensation award in favor of an alternate remedy when the statutory criteria necessary for accrual of workers' compensation benefits are met.  "[T]he rights and remedies granted by [workers' compensation] to an employee on account of a personal injury for which he or she is entitled to compensation . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise on account of such injury."  21 V.S.A. § 622.  Accordingly, a statutory employee's disavowal of the common law elements of an employment relationship does not grant the statutory employee the latitude to choose a common law remedy instead of a workers' compensation award.  See Mead v. W. Slate, Inc., 2004 VT 11, ¶¶ 12-16, 176 Vt. 274, 848 A.2d 257 (explaining that, though standards vary across states, workers' compensation is exclusive remedy except in circumstances of "the most egregious employer conduct" (quotation omitted)). This rule dictates an attendant, inverse rule—a party's intent to enter an employment relationship does not control whether a statutory employment relationship exists for purposes of workers' compensation.  By extension, a party's intent that money exchanged between two parties constitute wages does not control whether that monetary exchange is wages for the purposes of workers' compensation.  Therefore, claimant's intent regarding the payments she received from CCTA and any failure of CCTA to rebut that intent are not relevant to determination of whether she can be considered a statutory employee.  And as with the suggested ambiguity in CCTA's volunteer manual, claimant's intent regarding the payments she received or her general relationship with CCTA does not give rise to any disputed material facts for purposes of the Commissioner's summary judgment decision.

¶ 13.     We likewise cannot conclude on the facts of this case that the Commissioner erred by not considering the nature of the business, right to control, or other employment tests that claimant suggests support finding her CCTA's employee.    Within the scope of workers' compensation, these tests have typically been applied in two instances: first, to the determination of whether a party is an employee or an independent contractor and, second, to the question of whether a party can be considered a worker's indirect employer such that workers' compensation precludes an alternate remedy.  See Edson v. State, 2003 VT 32, ¶ 7, 175 Vt. 330, 830 A.2d 671 (holding "the critical inquiry . . . is whether the type of work being carried out by the independent contractor is the type of work that could have been carried out by the owner's employees as part of the regular course of the business"); Candido v. Polymers, Inc., 166 Vt. 15, 18, 687 A.2d 476, 479 (1996) (applying right to control test and noting limiting employee's remedy against indirect employer to workers' compensation is consistent with workers' compensation purpose because otherwise indirect employers "would be subject to double liability—ultimate responsibility for paying benefits under the Act through the [direct] employer, while remaining exposed to the threat of common-law negligence suits"); see also 2 L. Larson & T. Robinson, Larson's Workers' Compensation: Desk Edition § 60.05(3), at 60-10 (M. Bender rev. ed. 2017) (explaining right to control and nature of work tests most commonly used tests distinguishing between employee and independent contractor).  We have not used these tests to distinguish between an employee and a volunteer—in the cases cited above it was undisputed that the worker received wages, whether as an independent contractor or employee, and whether from a direct or indirect employer.  Thus, the application of these tests addresses a different question than the question presented here, and the Commissioner correctly did not reach whether claimant's relationship with CCTA satisfied the criteria of these tests.

¶ 14.     Workers' compensation is a precise statutory scheme, and the Commissioner and this Court must implement that precise statutory scheme in agreement with statutory definitions

8

and rules. Accordingly, common law considerations, such as the parties' intent or ambiguities in the parties' agreement, are not controlling on the question of whether a statutory employment relationship exists. Likewise, the tests of employment suggested by claimant, though applied to resolve some questions relevant to workers' compensation, do not control whether, as an initial matter, a statutory employment relationship exists.

¶ 15. A statutory employment relationship under the first prong of the statutory definition of an employee, as distinguished from the relationship between an entity and a gratuitous volunteer, turns as a threshold matter on the receipt of wages, as wages are defined in the workers' compensation statute. 2 L. Larson & T. Robinson, Larson's Workers Compensation Desk Edition § 65.01, at 65-1, 65-2 (noting "compensation decisions uniformly exclude from the definition of 'employee' workers who neither receive nor expect to receive any kind of pay for their services"). Our decision on this point is consistent with the distinction drawn by the Commissioner between an employee and a gratuitous worker as well as with our own caselaw.

¶ 16. Regarding the Commissioner's decision, while our review in this case is de novo, we accord the Commissioner's interpretation of workers' compensation deference because the Commissioner is tasked with administering this program. Letourneau v. A.N. Deringer/Wausau Ins. Co., 2008 VT 106, ¶ 8, 184 Vt. 422, 966 A.2d 133; see also Town of Killington v. Dep't of Taxes, 2003 VT 88, ¶ 5, 176 Vt. 70, 838 A.2d 91 ("Absent a clear and convincing showing to the contrary, decisions made within the expertise of agencies are presumed correct, valid and reasonable." (quotation and alteration omitted)). The Commissioner's decision here relied on the rationale of the Commissioner's earlier decision in Lyons v. Chittenden Central Supervisory Union. No. 29-15WC (Vt. Dep't of Labor, Jan. 13, 2016), http://labor.vermont.gov/wordpress/wp-content/uploads/Lyons29-15WC.pdf, [https://perma.cc/UG87-LUGE]. This Court reversed the Commissioner's decision in that case but did so without reaching the Commissioner's adoption of

9

the gratuitous worker rule.  See Lyons, 2018 VT 26, ¶¶ 16, 32 (plurality opinion); id. ¶ 33 (Robinson, J., concurring).  In Lyons, the Commissioner explained:

> Like an employee, a gratuitous worker—a volunteer, for example, or a person fulfilling a community service requirement, or a person advancing his or her own interests—may be subject to the employer's right to control the manner in which the work is performed.  Unlike an employee, however, a gratuitous worker neither receives nor expects to receive any kind of payment for his or her services.  The key indicator in these circumstances is not the right to control, but rather the right to bargained-for remuneration.  Simply put, absent actual or expected payment of some form of remuneration by employer to employee, an employment relationship does not exist, and workers' compensation coverage does not attach.

Lyons, No. 29-15WC, p.10, ¶ 7 (citations omitted).  The Commissioner further explained that the distinction between an employee and a gratuitous worker agrees with the purpose of workers' compensation—to provide wage replacement for injured workers.  Id. p.10, ¶ 8.

¶ 17.  This reasoning agrees with our own prior decisions.  For example, in Wolfe v. Yudichak, we held that a university student injured while acting as part of his university's volunteer student fire brigade could not claim workers' compensation.  153 Vt. 235, 244, 571 A.2d 592, 597 (1989).  Our decision in Wolfe depended on several factors, one of which was the lack of any meaningful workers' compensation remedy for the injured student because, as a student volunteer fireman, statute did not provide a way to calculate an average weekly wage in an amount that could serve him as wage replacement.  Id. at 242-43, 571 A.2d at 596-97.  Wolfe was not decided under § 601(14), the general definition of a worker or employee, but rather under § 601(12)(L), which specifically defines "public employment," and thus public employees, to include members of a volunteer fire department.  Nonetheless, Wolfe stands in part for the proposition that an injured person cannot claim workers' compensation as an employee who has entered the employment of an employer where the person has not received anything upon which average weekly wage can be based—that is, something that meets the statutory definition of wages. The Commissioner's reasoning on this point makes explicit what our prior decisions have made

10

implicit, and we therefore adopt the rule that employment under the first prong of the statutory definition requires wages as they are defined for workers' compensation. Accordingly, we can conclude that claimant "entered into the employment of" CCTA only if she received something that meets the definition of wages. 21 V.S.A. § 601(14).

¶ 18. As with other terms relevant to workers' compensation, wages are defined by statute—" '[w]ages' includes bonuses and the market value of board, lodging, fuel, and other advantages which can be estimated in money and which the employee receives from the employer as a part of his or her remuneration; but does not include any sum paid by the employer to his or her employee to cover any special expenses entailed on the employee by the nature of his or her employment." Id. § 601(13); see also Workers' Compensation Rule 8.1100: Calculating Average Weekly Wage and Compensation Rate (explaining worker's average weekly wage and compensation rate is based on wage statement, which includes gross wages, overtime earnings, tips, bonuses, and "fair market value of any room, board, food, electricity, telephone, uniforms or similar benefits provided the injured worker").[3] We have explained that the statutory definition of wages, because it includes nonmonetary forms of compensation, "is synonymous with 'earnings' "—earnings are "something earned as compensation for labor or the use of capital," a broader definition than the conventional definition of wages, which are "ordinarily defined as amounts of money paid daily or weekly for labor." Quinn v. Pate, 124 Vt. 121, 124, 197 A.2d

---

[3] The terms "wages" and "remuneration" have sometimes been used interchangeably. See Lyons, 2018 VT 26, ¶ 16 n.5 (plurality opinion) (noting that Commissioner's decision in that case "use[d] the terms 'remuneration' and 'wages' interchangeably"). In Lyons, the plurality stated that "remuneration is the broader term so that there can be remuneration without wages." Id. This statement uses the colloquial definitions of wages and remuneration, rather than the statutory definitions of those terms. We clarify here that "wages" is the correct term when referring to an employee's total compensation for purposes of workers' compensation. While the colloquial definitions of wages and remuneration may be different, such that, as discussed above, "wages" generally refers to a regular monetary payment—i.e., a paycheck—and "remuneration" may refer to the total compensation an employee receives, for purposes of workers' compensation, the two terms are synonymous. We prefer the term "wages" because an employee's temporary and permanent disability benefits are computed on the basis of the employee's average weekly wage, which is defined with reference to an employee's statutorily, not colloquially, determined wages.

795, 797 (1964) (quotations omitted); see also 21 V.S.A. § 650(a) ("Average weekly wages shall be computed in such manner as is best calculated to give the average weekly <u>earnings</u> of the worker[.]" (emphasis added)). Accordingly, and at the definition's most basic level, wages can be defined as a gain given an employee by his or her employer that is quantifiable and part of the employee's compensation.

¶ 19. The <u>Quinn</u> definition of wages as synonymous with earnings is entirely consistent with the statutory definition's exclusion of "sum[s] paid by the employer to his or her employee to cover any special expenses entailed on the employee by the nature of his or her employment." 21 V.S.A. § 601(13). The sums described are essentially an employer's payments to an employee that make the employee whole for the employee's work-related expenses. While this definition, as claimant points out, expressly describes these payments within the context of an employment relationship, the principle that this definition stands for applies equally to determining whether a monetary payment is wages for purposes of finding an employment relationship in the first instance. If payments that make an employee whole are not wages, and therefore cannot serve as part of the average weekly wage calculation, then these payments also cannot be the wages that are needed to find an employment relationship. In this case, claimant did not receive anything from CCTA that can be interpreted as a gain—therefore, claimant did not receive wages.

¶ 20. Claimant did receive regular monetary payments from CCTA—which could suggest that she received wages according to the conventional definition of that term. But CCTA's regular payments to claimant were based on the number of miles claimant drove and calculated according to federally established mileage rates, which the federal government sets according to the expected depreciation amount associated with each mile driven. See Internal Revenue Service, Publication 463: Travel, Entertainment, Gift, and Car Expenses (2017), https://www.irs.gov/publications/p463#en_US_2017_publink100033935 [https://perma.cc/N3 5G-B6CG] (follow "Transportation" hyperlink) (explaining federal tax deduction based on either

standard mileage rate or actual car expenses, both of which include cost of driving and maintaining car). Because CCTA's payments to claimant were calculated based on these rates of depreciation, those payments constitute reimbursement rather than wages.

¶ 21.   To reimburse means "to pay back" or "to refund," and a reimbursement is a payment made to refund the recipient for a cost expended.  Reimburse Webster's New International Dictionary (2d ed. 1961).  Put simply, a reimbursement makes the recipient whole, but is not an earning—that is, the reimbursement is not a gain to the recipient.  We recognize that claimant received significant payments from CCTA, beyond the actual short-term day-to-day cost of maintaining her car, and that these payments became a significant contribution to claimant's regular, weekly budget.  But CCTA's payments to claimant were nonetheless reimbursement for long-term depreciation in the value of her car due to the miles she drove as a participant in CCTA's volunteer driver program.  While Vermont's definition of wages for purposes of workers' compensation is broad enough to encompass nonmonetary earnings, it will not stretch so far as to encompass payments which only serve to make the recipient whole.  Therefore, we conclude that claimant did not receive wages and cannot be considered an employee of CCTA.[4]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[4] Because we hold that wages are necessary for an employment relationship under the first prong of the workers' compensation definition of employee, and that claimant did not receive wages, we need not consider any other elements that may be necessary to find an employment relationship under this same prong of the definition of an employee.

13