NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 57

No. 2015-329

| | |
|---|---|
| Deutsche Bank National Trust Company, as Trustee | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| Skip Watts and Paris Watts | March Term, 2017 |

William D. Cohen, J. (motions for summary judgment); Cortland Corsones (final judgment)

Jennifer L. Maynard and Douglas A. Giron of Shechtman Halperin Savage, LLP, Pawtucket, Rhode Island, for Plaintiff-Appellee.

Julie Carp, Vermont Legal Aid, Inc., Rutland, for Defendants-Appellants.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Defendant borrowers, Skip Watts and Paris Watts, appeal the trial court's summary judgment decision in favor of plaintiff lender, Deutsche Bank National Trust Company, in this mortgage foreclosure action. They assert that the trial court erred by finding that a dismissal with prejudice under Vermont Rule of Civil Procedure 41(b) is not an adjudication on the merits given preclusive effect in a foreclosure action. Lender argues in response that earlier decisions of this Court that gave preclusive effect to the dismissal of foreclosure actions should be applied only prospectively and not to this case. We reverse and dismiss lender's action.

¶ 2.    The relevant facts are undisputed.    Borrowers executed an adjustable rate promissory note for $185,000 with NovaStar Mortgage, Inc., in 2006.  NovaStar Mortgage, Inc., assigned the note to lender.  To secure the promissory note, borrowers executed a real property mortgage with the Mortgage Electronic Registration Systems, Inc., (MERS), as nominee for NovaStar Mortgage, Inc.  MERS then assigned the mortgage to lender.

¶ 3.    Borrowers did not make the monthly payment due on December 1, 2008, and thereby defaulted on their obligations under the note and mortgage.  Lender accelerated payments due on the promissory note, requiring immediate payment of the entire amount due including outstanding principal, interest, fees, property taxes, and insurance premiums.  Almost a full year after borrowers' 2008 default, lender filed a complaint in the superior court initiating a foreclosure action against borrowers.  The December 2008 default was the basis for this cause of action, and lender sought judgment for the entire amount due on the note, including the principal and all interest on the note, all sums expended, and attorney's fees and costs.  It also sought foreclosure of the mortgage and a deficiency judgment for the net amount owed on the note after the sale of the mortgaged property.  Lender filed an Affidavit of Completion of Service by Publication on February 8, 2010.  This was lender's last filing in the case.  Borrowers did not file an answer to the complaint.

¶ 4.    There was no further action in the case for over a year.  The trial court issued a Notice of Potential Dismissal on April 22, 2011, stating that the "matter [was] eligible for dismissal pursuant to V.R.C.P. 41(b)(1)(ii) and [might] be dismissed on the Court's motion on May 6, 2011 unless good cause [was] shown for its continuance."*  Lender filed nothing in response to the

---

*  V.R.C.P. 41(b)(1)(ii) provides that the court may dismiss an action where "[a]ll parties against whom a judgment for affirmative relief is sought have failed to plead or otherwise defend as provided by these rules and the plaintiff has failed to request or apply for a default judgment within six months of the filing of the action."  Pursuant to V.R.C.P. 41(b)(3), such a dismissal "operates as an adjudication upon the merits" unless otherwise specified.

Notice, and the court dismissed the action on July 1, 2011, based on lender's failure to prosecute its claim. Following this dismissal, borrowers and their loan servicer unsuccessfully attempted to find a solution that would allow borrowers to resume payments.

¶ 5. Lender filed the action currently before the Court in 2013, again filing a complaint that alleged borrowers defaulted on their promissory note in December of 2008. This second complaint, like the complaint filed in 2009, sought a judgment for the entire outstanding principal, interest, insurance payments, taxes, and attorney's fees, as well as foreclosure of the mortgage and a deficiency judgment. Borrowers answered that the 2013 action was precluded under the principle of res judicata. Each party moved for summary judgment, and each repeated the claims in its initial filings. Lender pointed to borrowers' 2008 default and sought foreclosure and the full payment requested in its complaint, while borrowers argued that the 2011 dismissal of lender's prior action for collection on the note and foreclosure of the mortgage acted as an adjudication on the merits and, therefore, res judicata barred a second action based on the same default. The trial court granted lender's motion, applying equitable principles to find that the 2011 dismissal was not a preclusive adjudication on the merits but that lender was entitled to recover interest only if it was due after the date of lender's first, 2009, complaint against borrowers.

¶ 6. Borrowers filed a timely appeal. This Court placed their appeal on waiting status and stayed all deadlines pending decisions in <u>Deutsche Bank v. Pinette</u>, 2016 VT 71, __ Vt. __, 149 A.3d 479, and <u>Cenlar FSB v. Malenfant</u>, 2016 VT 93, __ Vt. __, 151 A.3d 778. Following the issuance of these decisions, lender dropped from its brief any argument that the trial court decision could be affirmed if the decisions applied to cases in progress when they were issued.

¶ 7. We review summary judgment rulings de novo, using the same standard as the trial court. <u>Robertson v. Mylan Labs., Inc.</u>, 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 210. Summary judgment is proper when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(a). In determining whether genuine issues of material

3

fact exist, we accept as true any allegations made in opposition to the summary judgment motion if they are supported by affidavits or other evidentiary materials. The nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson, 2004 VT 15, ¶ 15.

¶ 8. Because our rulings in Pinette and Malenfant are dispositive here, we begin by outlining these two cases. Pinette presented facts similar to the present case. There, the borrower executed a promissory note for $54,400 secured by a mortgage of real property. The note and mortgage were held by the lender. After the borrower defaulted on payments, the lender filed a complaint for judgment on the promissory note, mortgage foreclosure, and a deficiency judgment. Pinette, 2016 VT 71, ¶ 2. The superior court dismissed the action without prejudice after the borrower failed to enter an appearance or file an answer and the lender failed to seek a default judgment as directed by the court. Id. ¶ 4. The lender then filed a second action against the borrower, using an identical complaint. Again, the borrower failed to answer and the superior court directed the lender to file a motion for default judgment. The lender failed to do so, and the court dismissed the action without specifying whether the decision was with or without prejudice. Id. ¶ 5.

¶ 9. After the borrower failed to make further payments, the lender filed a third identical complaint to which the borrower, appearing pro se, filed an answer and moved to dismiss on the basis of claim preclusion. The superior court granted the motion to dismiss, finding that this third action was barred by the dismissal of the second action with prejudice. Id. ¶ 6. The lender subsequently appealed, and this Court held that in mortgage foreclosure actions, the effect of an involuntary dismissal for failure to prosecute operates as an adjudication on the merits, barring a mortgagee's subsequent foreclosure claims based on the same default. Id. ¶ 8.

¶ 10. In Malenfant, we affirmed our decision in Pinette, holding that foreclosing entities must give borrowers notice and an opportunity to reinstate loans prior to pursuing subsequent foreclosure actions based on new defaults. Malenfant, 2016 VT 93, ¶¶ 39-40.

4

¶ 11. Borrowers argue that the trial court decision in this case must be reversed, and the 2013 complaint dismissed, under Pinette and Malenfant. In response, lender asks us to rule that our decisions in Pinette and Malenfant should apply here according to the rule of selective prospectivity and following the three-factor test laid out in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971). Under this rule, courts apply a new rule in the case in which it is pronounced, but return to the old rule with respect to all other cases arising on facts that predate the new rule's pronouncement. See id. at 105-07. Lender notes that we adopted the Chevron Oil rule in Solomon v. Atlantis Development, Inc., 145 Vt. 70, 483 A.2d 253 (1984), and argues that application of the Chevron Oil rule requires us to conclude that lender's 2013 action was not precluded under the Pinette and Malenfant holdings because the underlying facts here transpired before we announced the holdings in those cases.

¶ 12. In rejecting lender's position, we first emphasize that Chevron Oil is a forty-six-year-old decision that is no longer good law. In Chevron Oil, the U.S. Supreme Court established three factors for determining the effect of a decision on civil cases in progress, but not finally concluded, when the decision is issued. 404 U.S. at 106-07. For purposes of analysis, we will define the issue in that case as whether the new decision would be applied only prospectively.

¶ 13. For a first factor, the Court in Chevron Oil stated that a decision could apply prospectively only when it established a new principle of law. The decision should, therefore, either overrule an existing rule of law or resolve an issue of first impression such that the resolution was not clearly foreshadowed by legal trends. Id. at 106. Second, courts must weigh the merits and demerits in each case by looking to the history of the rule at issue, including its purpose and effect, to determine whether retrospective application would hinder operation of the law. Id. at 107. Finally, courts should weigh the inequity imposed by a retroactive application of the law. Id. The Supreme Court emphasized that where a court's decision would produce substantial inequitable results if applied retroactively, then courts should not do so. Id.

5

¶ 14. The Supreme Court has since greatly restricted the application of Chevron Oil, limiting the kind and number of decisions given effect only prospectively. First, in Griffith v. Kentucky, 479 U.S. 314, 328 (1987), the Court declined to apply the Chevron Oil test to criminal cases decided on federal law, abandoning the possibility of selective prospectivity for such cases. The Court stated two main reasons for this holding. First, the Court reasoned that the "integrity of judicial review" requires courts to apply newly adjudicated rules to all similarly situated cases pending direct review. Id. at 322-23. And second, the Court maintained that by selectively applying new rules to some cases and not others, courts were violating the principle that similarly situated defendants be treated the same. Id. More specifically, the Court noted that by not applying new rules to pending cases, actual inequity may result as courts choose which similarly situated defendants would benefit from the new rule. Id. Thus, the Court held that newly adjudicated rules for criminal prosecutions based on federal law would be applied retroactively to all cases, both state and federal. Id. at 328.

¶ 15. The Court limited the scope of the Chevron Oil test further in Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993). There, the Court held that when it applies a new rule of federal law to the parties before it in civil cases, courts must give full retroactive effect to that decision in all cases "still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Id. at 97. Thus, the Court eliminated the possibility of both Chevron Oil's selective prospectivity, as well as pure prospectivity, for decisions dealing with questions of federal law. The Court recognized that its decision left state courts with more freedom to limit retroactive operation of their own interpretations of state law. Id. at 100.

¶ 16. The Harper ruling built on an earlier plurality decision, James B. Beam Distilling Co. v. Georgia, 501 U.S. 529 (1991), in which six members of the Court rejected selective prospectivity altogether for questions of federal law, though the rationale for this decision varied

among the four concurring opinions filed. In his opinion, Justice Souter relied on <u>Griffith v. Kentucky</u>, stating that the principle that "similarly situated litigants should be treated the same, carries comparable force in the civil context." <u>Id</u>. at 540 (Souter, J., concurring). Justice Souter's decision was based in large part on equity principles and he reasoned that "[b]ecause the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the <u>Chevron Oil</u> test cannot determine the choice of law by relying on the equities of the particular case." <u>Id</u>. at 543. The <u>Harper</u> Court applied this reasoning, as well as the earlier <u>Griffith</u> reasoning, to hold that the law cannot be allowed to " 'shift and spring' according to 'the particular equities of individual parties' claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." <u>Harper</u>, 509 U.S. at 97 (quoting <u>James B. Beam Distilling Co.</u>, 501 U.S. at 543 (Souter, J., concurring) (alteration omitted)).

¶ 17.    In both <u>Harper</u> and <u>James B. Beam Distilling Co.</u>, the Court limited its decision to questions of federal law. However, its analysis spoke of a broad disfavor toward selective prospectivity in civil cases. The premise that similarly situated litigants ought to be treated the same applies with equal weight to issues of state law and federal law. Actual inequity results where a decision would by chance grant some litigants the benefit of a newly declared rule but deny that benefit to others based solely on when the litigant's case was pending review before the court.

¶ 18.    In <u>Solomon v. Atlantis Development, Inc.</u>, we adopted the <u>Chevron Oil</u> test in a civil case and applied it to hold that an earlier decision would be applied only prospectively. 145 Vt. at 74-75, 483 A.2d at 256-57. The earlier decision, <u>Soucy v. Soucy Motors, Inc.</u>, held that a decision from a superior court consisting of the presiding and two assistant judges was invalid on jurisdictional grounds if the governing law required only the presiding judge to sit on the case even if the decision was unanimous so that the participation of the assistant judges had no effect on the decision. 143 Vt. 615, 619-20, 471 A.2d 224, 226-27 (1983), superseded by statute, 1983, No.

7

201 (Adj. Sess.), § 3. Our reasons for adopting the <u>Chevron Oil</u> rule in <u>Solomon</u> were brief. In <u>State v. Shattuck</u>, 141 Vt. 523, 529, 450 A.2d 1122, 1125 (1982), we had adopted the "common law rule" applicable in criminal cases, as explained in <u>United States v. Johnson</u>, 457 U.S. 537 (1982). That rule provided that a constitutional ruling in criminal cases would be retroactive only with respect to cases that were pending on direct review. <u>Johnson</u>, 457 U.S. at 562-63. <u>Johnson</u> acknowledged that the retroactivity rule was different in civil cases and was controlled by <u>Chevron Oil</u>. <u>Id</u>. at 563. Having followed <u>Johnson</u> for criminal cases in <u>Shattuck</u>, in <u>Solomon</u> we continued to follow its direction as to civil cases and applied the <u>Chevron Oil</u> test to determine whether <u>Soucy</u> would be prospective only. <u>Solomon</u>, 145 Vt. at 74-76, 483 A.2d at 256-57. In explaining these decisions and their rationales, we note that neither the underlying decision in <u>Shattuck</u>, the retroactivity of which was in issue, nor the underlying decision involved in <u>Solomon</u>, was based on the federal constitution or other federal law—thus, we were not required to follow <u>Johnson</u> or <u>Chevron Oil</u>. We further note that <u>Solomon</u> was decided nine years before the U.S. Supreme Court decided <u>Harper</u>.

¶ 19.    Only once since <u>Solomon</u> have we ruled under the <u>Chevron Oil</u> test that a decision should be applied prospectively only, and that decision involved the effect of the same decision that was involved in <u>Solomon</u>: <u>Soucy v. Soucy Motors, Inc.</u>  See <u>Crabbe v. Veve Assocs.</u>, 145 Vt. 641, 497 A.2d 366 (1985). In all other cases where a party argued that we should apply a decision only prospectively, we declined to rely upon the <u>Chevron Oil</u> factors. See, e.g., <u>Fagnant v. Foss</u>, 2013 VT 16A, ¶ 22, 194 Vt. 405, 82 A.3d 570; <u>Wilk v. Wilk</u>, 173 Vt. 343, 350 n.*, 795 A.2d 1191, 1196 n.* (2002). In <u>LaFaso v. Patrissi</u>, 161 Vt. 46, 57, 633 A.2d 695. 701 (1993), we noted that <u>Harper</u> had at least partially overruled <u>Chevron Oil</u>, but decided that the case did not turn on whether a decision would be prospective only and that we would not decide whether to follow <u>Harper</u>.

¶ 20. Because this case was on direct review when <u>Pinette</u> and <u>Malenfant</u> were decided, we are squarely presented with whether we should adopt <u>Harper</u>. For a number of reasons, we decide to adopt the <u>Harper</u> rule. It will keep our law on this subject consistent with that announced by the U.S. Supreme Court for federal law cases and generally eliminate differences between the retroactive effect of civil and criminal decisions, including decisions based on federal constitutional and statutory law. And, as the Supreme Court reasoned in <u>Harper</u>, this rule will treats similarly situated litigants the same and does not selectively apply new rules. 509 U.S. at 97.

¶ 21. Lender acknowledges that under <u>Pinette</u> and <u>Malenfant</u> this action is barred by claim preclusion if the foreclosure that lender seeks is based on the same default as the earlier action. It argues, however, that the record contains sufficient indication that there was a new default such that we should remand the case to the superior court for it to take additional evidence on this point. This argument is inconsistent with lender's statement of uncontested facts in support of its motion for summary judgment, which states: "[d]efendants Skip and Paris Watts are presently in default of the Note and Mortgage, having failed to make the monthly payment that became due on December 1, 2008, and having failed to make all payments when due under the Note thereafter." The default date—December 1, 2008—is the same as the default date in the 2009 action.

¶ 22. In making its argument, lender relies upon a demand letter it described in its summary judgment argument as follows: "The demand letter in the present foreclosure action was dated August 28, 2012, well after the dismissal of the 2009 Action, and reflected a new amount due (including principal, interest, unpaid taxes and insurance, late fees and other fees) to reinstate the loan." The demand letter was not included as supporting material for the summary judgment motion, and its content has never been disclosed. There is no claim that it alleged a new and different default date. For all we know, the "new amount" was much higher than the amount in

9

the original demand letter and reflected no consequence from the dismissal of the original foreclosure action. Indeed, the statement of uncontested facts suggests exactly this content.

¶ 23. In many ways, the situation here is the same as that present in <u>Pinette</u>, where the lender tried to place a copy of a new demand letter in its printed case filed in this Court even though it had never been presented to the trial court. We granted a motion to strike it from the printed case with the following ruling: "We conclude that lender failed to present its theory of a new default, and the supporting document, in the trial court and therefore has not preserved it for appellate review . . . . We cannot, therefore, rely on the new default theory." <u>Pinette</u>, 2016 VT 71, ¶ 23. For the same reason, we cannot rely on a new default theory here to give lender a new opportunity to demonstrate that its case is not precluded by the dismissal of the earlier note collection and mortgage foreclosure case.

<u>The court's summary judgment decision is reversed and the matter is remanded for dismissal of plaintiff's February 2013 complaint</u>.

FOR THE COURT:

_____

Associate Justice

10