NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 14

No. 2016-301

| | |
|---|---|
| Carole Kuligoski, Individually and on behalf of Michael J. Kuligoski, and Mark Kuligoski and James M. Kuligoski | Supreme Court |
| | On Appeal from Superior Court, Caledonia Unit, Civil Division |
| v. | |
| Evan M. Rapoza, John E. Rapoza, Anne M. Rapoza, John A. Rapoza and Christine M. Rapoza | February Term, 2017 |

Robert R. Bent, J. (motion for summary judgment); Michael R. Kainen, J. (final judgment)

Richard T. Cassidy and Matthew M. Shagam of Rich Cassidy Law, P.C., Burlington, for
  Plaintiffs-Appellants.

Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland, for Defendants-Appellees.


PRESENT: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Davenport, Supr. J. (Ret.),
         Specially Assigned


¶ 1.     **SKOGLUND, J.**    This is the second case arising from the near-fatal assault of Michael Kuligoski by Evan Rapoza, who had previously been diagnosed with schizophreniform disorder. In this case, plaintiffs—members of the Kuligoski family—brought suit against Evan's grandparents, claiming that they were liable for Evan's assault of Mr. Kuligoski while Mr. Kuligoski was repairing the furnace at their rental property. Plaintiffs claim, among other things, that the grandparents are vicariously liable for Evan's father's negligent hiring or supervision of Evan, who was there to help his father repaint an apartment.[1] On appeal, plaintiffs seek reversal

---

[1] Plaintiffs also brought suit against Evan and his parents. The trial court granted summary judgment to the parents in November 2015. In August 2016, while the lawsuit was still pending, the court dismissed Evan and his parents from this action with prejudice based on the parties' stipulation. Thus, grandparents are the only appellees in this appeal.

of the trial court's order granting grandparents summary judgment. Plaintiffs argue that the court erred by determining that grandparents could not be held vicariously liable for the attack because it was not reasonably foreseeable. We affirm, but on a different basis than that relied upon by the trial court.

¶ 2. The following unchallenged facts come from grandparents' statement of undisputed facts and the trial court's order granting grandparents summary judgment. In 2009, during the summer following his freshman year in college, Evan Rapoza became ill with mononucleosis. He went back to school in upstate New York that fall but soon returned home complaining that he was tired. After returning home, he began to act oddly, one was forgetful and overly dependent. That winter, Evan began counseling and treatment, but his mental condition and behavior worsened. In October 2010, his behavior toward some children prompted his mother to take him to Vermont Medical Center for admission and psychiatric evaluation.

¶ 3. Over the following month, Evan received treatment at multiple facilities. He was alternatively diagnosed with schizophreniform disorder, schizoaffective disorder, and schizophrenia. Eventually, he was admitted to the Brattleboro Retreat for five days. He was discharged from the Retreat with prescriptions for antipsychotic medication and a plan for outpatient monitoring by Northeast Kingdom Human Services. In late December 2010, a little over a month after his discharge from the Retreat, Evan told his mother that he had not been taking his medication. On February 26, 2011, Evan assaulted and severely injured Mr. Kuligoski while Evan was helping his father with work at an apartment building owned by grandparents. Evan was there because his father, who is grandparents' son, managed the property and was doing renovation work at the building for grandparents.

¶ 4. Plaintiffs commenced this action in April 2013. Their complaint contained three counts, one against Evan for assault, one against his parents for negligence in failing to supervise and control him, and one against grandparents for negligence in failing "to take reasonable steps

to ensure that the[ir] property was reasonably safe for visitors there." With respect to this third remaining count, plaintiffs alleged that Evan's father, as grandparents' agent, "had a duty to effectively supervise and control Evan" and that his failure to do so "was negligence imputable to [grandparents]." They further alleged that grandparents were negligent in failing to supervise and control their son, who created an unreasonable risk to Mr. Kuligoski by bringing Evan onto the property.

¶ 5.     In December 2013, following discovery that included plaintiffs deposing the parents and grandparents, grandparents filed a motion for summary judgment. Grandparents argued that, for the following reasons, they could not be held liable for Evan's attack on Mr. Kuligoski: (1) the attack was unforeseeable because at the time of the attack they did not know that Evan had mental health issues; (2) any negligence on father's part could not be imputed to them because father was an independent contractor rather than their employee; and (3) in any event, father was not negligent in supervising Evan because Evan's mental health providers did not advise him that Evan was dangerous to others.

¶ 6.     In their response, plaintiffs asserted that: (1) whether grandparents knew of Evan's mental illness was irrelevant because their liability was based on the claim that Evan's father was their employee and created an unreasonable risk of danger to Mr. Kuligoski by bringing Evan onto the property he managed for them; (2) grandparents failed to conclusively establish that father was an independent contractor rather than their employee; and (3) the attack was foreseeable because Evan's parents knew that Evan had violent tendencies. Plaintiffs also stated that they needed to depose mental health care professionals who had treated Evan to better respond to the question of what Evan's parents knew about Evan's violent tendencies.

¶ 7.     In May 2015, after both sides filed supplemental memoranda, the trial court granted grandparents' motion for summary judgment, concluding that: (1) to the extent plaintiffs were alleging direct liability on the part of grandparents based on a claim of negligent supervision, that

3

claim failed as a matter of law because it is undisputed that on the day of the assault grandparents were unaware of Evan's mental-health issues; and (2) notwithstanding the ambiguity as to whether father was grandparents' employee, grandparents owed no duty to Mr. Kuligoski because Evan's parents did not undertake to render services by monitoring Evan's treatment after his release from the Brattleboro Retreat and because, even assuming that father was grandparents' employee, Evan's assault against Mr. Kuligoski was not foreseeable.

¶ 8.     Plaintiffs appeal that decision to this Court, arguing that the trial court erred: (1) in finding as a matter of law that Evan's attack on Mr. Kuligoski was not foreseeable; (2) in refusing to apply the doctrine of respondeat superior even though grandparents presented a case in which a jury could have reasonably concluded that father was their employee and that he negligently supervised Evan at their apartment building at a time when he knew or should have known that Evan's violent tendencies posed a risk of harm to other persons at the site; and (3) in rejecting their claim that Evan's parents undertook and breached a duty to monitor Evan's treatment after his release from the Brattleboro Retreat, thereby making Evan's assault on Mr. Kuligoski more likely.

¶ 9.     Grandparents respond that: (1) they did not owe a duty of care to protect Mr. Kuligoski from unforeseeable harm resulting from Evan's assault; (2) final judgment in favor of Evan's parents bars plaintiffs' claim seeking to impute the parents' alleged negligence to grandparents; (3) policy considerations preclude imposing a duty on Evan's father to prevent Evan from harming Mr. Kuligoski; and (4) their son's alleged negligence in supervising Evan cannot be imputed to them based on their son's alleged employment relationship with them or a claim that Evan's parents undertook a duty to monitor Evan's treatment after his release from the Brattleboro retreat.

¶ 10.     On appeal, we review summary judgment rulings de novo, using "the same standard as the trial court." White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999).  Summary judgment is appropriate only if the moving party "shows that there is no

4

genuine dispute as to any material fact" and that the party "is entitled to judgment as a matter of law." V.R.C.P. 56(a). To determine whether there is any genuine dispute as to any material fact, "we accept as true any allegations made in opposition to the summary judgment motion if they are supported by affidavits or other evidentiary materials." Deutsche Bank Nat'l Trust Co. v. Watts, 2017 VT 57, ¶ 7, ___ Vt. ___, 171 A.3d 392. In assessing the facts, we give the nonmoving party the benefit of "all reasonable doubts and inferences." Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310.

¶ 11. As a preliminary matter, we reject grandparents' argument that plaintiffs' failure to appeal from the trial court's November 2015 order granting summary judgment to Evan's parents estops plaintiffs from pursing their claim imputing negligence to the grandparents. In so arguing, grandparents point to the court's statements in that order regarding plaintiffs' failure to produce facts indicating either an employment relationship between Evan and his father or the parents' awareness of the danger posed by Evan. Because Evan remained as a defendant in the case after the November 2015 order granting the parents summary judgment, there was no final judgment until Evan and his parents were dismissed from the case in August 2016 based on the parties' stipulation. Plaintiffs then timely appealed the trial court's order granting grandparents summary judgment. Thus, there is no preclusive effect arising from the court's summary judgment order in favor of the parents.

¶ 12. We now turn to the challenged order granting grandparents summary judgment based on a lack of foreseeability of the harm caused by Evan. We begin by examining the alleged employer-employee relationship between grandfather and father because we find that issue determinative.

¶ 13. Plaintiffs claim that father was negligent in hiring Evan and supervising him on the day of the attack, and that his negligence may be imputed to grandparents because of their employer-employee relationship with father. The fact that the assault occurred on grandparents'

property does not necessarily make grandparents liable under the doctrine of respondeat superior. See <u>Iverson v. NPC Intern., Inc.</u>, 2011 SD 40, ¶ 11, 801 N.W.2d 275 ("The mere fact that the assault took place on [the owner's] property was not enough to make [the owner] liable under the doctrine of respondeat superior."). In the context of plaintiffs' claim, "[t]he doctrine establishes a principle of employer liability for the costs that work-related torts impose on third parties." Restatement (Third) of Agency § 2.04 cmt. b (2006). "Under the settled doctrine of respondeat superior, an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." <u>Brueckner v. Norwich Univ.</u>, 169 Vt. 118, 122-23, 730 A.2d 1086, 1090 (1999); see Restatement (Third) of Agency § 7.07(1) ("An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.").[2]

¶ 14. Thus, to prevail on its remaining claim against grandparents, plaintiffs must demonstrate not only negligence on the part of father, but also an employer-employee relationship between grandfather and father that warrants imposing liability on grandparents for father's negligence. In the context of tort cases, we have relied upon the common law "right to control" test to determine whether a worker is an employee or an independent contractor. See <u>Hathaway v. Tucker</u>, 2010 VT 114, ¶ 23, 189 Vt. 126, 14 A.3d 968; <u>RLI Ins. v. Agency of Transp.</u>, 171 Vt.

---

[2] As indicated above, plaintiffs' complaint describes father as grandparents' agent. In their opposition to grandparents' motion for summary judgment and in their brief on appeal, however, plaintiffs focus exclusively on grandparents' vicarious liability arising from an employer-employee relationship between grandparents and father. See Restatement (Third) of Agency § 2.04 cmt. a (2006) (stating that Third Restatement uses terms "employer" and "employee" in place of "master" and "servant"); Restatement (Second) of Agency § 2(2) (1958) (defining servant as "an agent employed by a master to perform service in [the master's] affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master."); see also <u>id</u>. § 1 cmt. e ("[T]he liability of a master for the torts of his servant is greater in extent than the liability of a principal for the torts of an agent who is not a servant."). "A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent." Restatement (Third) of Agency § 7.05(1). Plaintiffs make no claim of liability under this Restatement subsection, as their only remaining claim against grandparents is one of vicarious, not direct, liability.

553, 554, 762 A.2d 475, 477 (2000) (mem.); LeClair v. LeClair, 2017 VT 34, ¶ 38, ___ Vt. ___, 169 A.3d 743 (stating that "essential element" in determining employer-employee relationship "is the right to control" (quotation omitted)); see also Restatement (Third) of Agency § 7.07(3)(a) (stating that, for purposes of that section, "an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work").

¶ 15.    "Under th[at] test, a worker is an employee if the party for whom work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work." Hathaway, 2010 VT 114, ¶ 23 (quotation omitted); see RLI Ins., 171 Vt. at 554, 762 A.2d at 477 ("If the party for whom the work is being done may prescribe the result, means and methods by which the other shall do the work, an employee/employer relationship is established."); cf. Watts v. Mont. Rail Link, Inc., 1999 MT 18, ¶ 11, 975 P.2d 283 (noting that, with respect to Federal Employers Liability Act claims, key to determining whether employer-employee relationship exists is degree of control over performance of work and manner in which it is done).[3]

¶ 16.    The right-to-control test is the primary and generally determinative standard, but when it "does not clearly answer the question, we look to other factors to help analyze the nature of the employment relationship"—specifically, the factors set forth in § 220 of the Restatement

---

[3]    We note that the "right to control" test is a component of the determination of employment status for unemployment insurance purposes. 21 V.S.A. § 1301(6)(B)(i-iii) (setting forth ABC test for determining whether employment relationship exists). However, "[w]e have consistently held that the statutory definition [of employer in that context] is broader than the common law definition." LeClair, 2017 VT 34, ¶ 42; see Great N. Constr., Inc. v. Dep't of Labor, 2016 VT 126, ¶ 14, ___ Vt. ___, 161 A.3d 1207 ("Vermont's statutory definition of employment is broader than the common law master and servant relation, and it encompasses many relationships outside of the common law concepts." (quotations omitted)); see Fleece on Earth v. Dep't of Emp't & Training, 2007 VT 29, ¶ 11, 181 Vt. 458, 923 A.2d 594 (stating that statutory scheme "is broader than the common law master-servant relation, and it draws into its sweep workers who might be independent contractors under the common law"). In particular, the level-of-direction-and-control component for unemployment insurance purposes focuses more on the right than the exercise of control. Fleece on Earth, 2007 VT 29, ¶ 11 ("[T]he control or direction element of the statutory ABC test is not the same as the common law 'control' test for independent contractors.").

(Second) of Agency. RLI Ins., 171 Vt. at 554, 762 A.2d at 477. Put another way, the right-to-control test is the "general standard" and "the remaining Restatement factors are supplementary to [that] test, particularly in a close case." Hathaway, 2010 VT 114, ¶ 32. In addition to "the extent of control . . . over the details of the work," which is essentially the right-to-control test, the Restatement factors examine whether the worker is engaged in a distinct occupation, whether the kind of occupation engaged in is usually done under the direction of an employer, the skill required, whether the worker supplies the tools for the work, the length of time the worker is employed, whether payment is by time or by the job, whether the work is part of the regular business of the principal, whether the parties believe they are creating an employer-employee relationship, and whether the principal is or is not in business. Restatement (Second) of Agency § 220(2)(a)-(j).

¶ 17. With this law in mind, we now examine the undisputed material facts concerning the relationship between grandparents and father with respect to father's work at grandparents' rental property. In 2007, grandparents, who were retired and living in Rhode Island during all relevant times, purchased as a retirement investment a two-story residential building located near their son's family in St. Johnsbury. The building had two tenants on each story. Their son, whom we refer to herein as father, acted as the property manager for his parents. At their insistence, grandparents paid him $100 per month even though he was willing to do the work for nothing. This management fee covered mowing and plowing, dealing with local vendors, and handling relations with the tenants.

¶ 18. When a tenant on the first floor moved out shortly after grandparents purchased the building, grandparents decided to undertake some renovations on that floor. Father did some of the renovation work himself, and grandparents reimbursed him for his out-of-pocket expenses and sometimes for his travel expenses. From time to time, grandparents paid father an additional hourly rate for extensive renovation work. Father sent grandparents an annual summary of the income and expenses for the building. Grandparents would also pay their daughter-in-law and

8

grandchildren on an hourly basis when those family members occasionally helped father out with work at the building.

¶ 19. Grandparents traveled from their Rhode Island home four or five times a year to visit father and his family. When grandparents visited St. Johnsbury, sometimes grandfather would work at the apartment building along with father. Grandparents discussed with father and approved any major renovation projects on the building. When father saw something that could be corrected, he would mention it to grandparents to see if they wanted it done. In his deposition, grandfather described his interaction with his son as: you buy the materials, do the job, and tell me how much you want. Grandfather further stated that father determined what needed to be done because father was the one doing the job. Grandparents at times made decisions regarding the selection of carpets, tiles, paint, and bathroom fixtures. They did not know whether father had a regular schedule for his work at the building. Father used his own tools or tools owned by grandparents that were at the building. Father used his discretion regarding who he would take to work at the building and how he went about the work.

¶ 20. Grandparents contend that, given these undisputed facts, they were entitled to summary judgment on the basis of there being no employer-employee relationship between them and father. They argue that nothing in the summary judgment record, including the depositions of the defendants in this action, suggest that they specified the means or methods of father's work at the building. They further state that they treated father as in charge of managing the building and completing renovations he recommended as he saw fit without any direction as to his schedule or means or methods of his work.

¶ 21. Plaintiffs respond that the employment relationship between grandparents and father, as well as the one between father and Evan,[4] was ambiguous enough to be considered by a

_____

[4] In response to grandparents' motion for summary judgment, plaintiffs made specific arguments as to the existence of an employer-employee relationship between grandparents and father. However, as the trial court pointed out in its November 2015 decision granting the parents

9

jury rather than determined by the court as a matter of law. In their response to grandparents' motion for summary judgment, plaintiffs argued that grandparents purchased the apartment building as a business investment, that they retained control of the business while entrusting its management to father, that they made the final decision as to renovation work, and that father used some of grandparents' equipment in doing work at the building.

¶ 22. The question of "whether or not there is a sufficient group of favorable factors to establish" an employer-employee relationship for purposes of imposing vicarious liability is generally "for the triers of fact to determine." Restatement (Second) of Agency § 220 cmt. c. But when the proffered facts demonstrate an absence of such a relationship, that determination "is made by the court." Id.

¶ 23. Here, few if any facts support finding an employer-employee relationship between grandparents and father under our primary right-to-control test. The undisputed facts show that father managed the out-of-state grandparents' building and did renovation work that he recommended without any control, or expectation of control, by grandparents over the means or methods of his work. Although grandparents, as the ones paying for the work, gave final approval for any major renovation work father recommended, father chose the means and methods to do the work without oversight. Essentially, grandparents left the management and renovation of the building to father to do as he saw fit. The fact that grandparents might choose what carpets, tiles, or fixtures would be used does not indicate that they controlled the means or methods of father's work.

¶ 24. Because this is not a close case with respect to the primary right-to-control test, we need not look at the supplementary Restatement factors. In any event, an examination of those

---

summary judgment, plaintiffs have failed to allege any facts or to make any cogent arguments to support the existence of an employer-employee relationship between father and Evan. Given our determination that plaintiffs have failed to establish the existence of an employer-employee relationship between grandparents and father, we need not determine whether plaintiffs' failure to establish such a relationship between father and Evan is also fatal to their remaining claim.

factors overall does not indicate an employer-employee relationship between grandparents and father. Pursuant to those factors, an employer-employee relationship is indicated if, in addition to "an agreement for close supervision or de facto close supervision of the servant's work," there is

> work which does not require the services of one highly educated or skilled; the supplying of tools by the employer; payment by hour or month; employment over a considerable period of time with regular hours; full time employment by one employer; employment in a specific area or over a fixed route; the fact that the work is part of the regular business of the employer; the fact that the community regards those doing such work as servants; the belief by the parties that there is a master and servant relation; an agreement that the work cannot be delegated.

Id. cmt. h. Plaintiffs do not examine these factors,[5] some of which suggest an employer-employee relationship while others suggest otherwise. Cf. Crawford v. Lumbermen's Mut. Cas. Co., 126 Vt. 12, 18, 220 A.2d 480, 484 (1966) (citing as "significant" in finding no employer-employee relationship "that the worker's engagement was casual, over an indefinite period, without fixed working hours and at the will and discretion of the worker"). In any event, consideration of those factors that do suggest such a relationship cannot overcome the primary right-to-control test. Application of that test, given the undisputed facts in this case, unequivocally demonstrates the lack of such a relationship between grandparents and father.[6]

---

[5] Rather than examine the Restatement factors that this Court has applied in close cases, plaintiffs cite factors established by the Internal Revenue Service for determining whether there exists an employer-employee relationship for tax purposes. As with the supplementary Restatement factors, those factors do not indicate an employer-employee relationship here, given the facts of this case. In any event, the policies for determining the existence of such a relationship for tax purposes are not necessarily aligned with the policies underlying whether to impose vicarious liability in tort cases. Cf. RLI Ins., 171 Vt. at 555, 762 A.2d at 478 (stating in tort case that "[c]haracterization as an independent contractor for tax purposes alone does not necessarily lead to a legal determination of employment status.").

[6] The dissent makes much of the filial relationship between grandparents and father, noting that the historical justification for vicarious liability arose from the responsibility of the master living and working alongside servants or family members in a domestic or mercantile household. To the extent that this historical note continues to be relevant to finding vicarious liability based on an employer-employee relationship, it has no impact in this case, given that grandparents live out of state and were not part of a domestic or mercantile household with their son's family.

¶ 25.    Given our determination as a matter of law that no employer-employee relationship existed between grandparents and father that would subject grandparents to vicarious liability for any negligence on father's part in bringing Evan to the workplace on the day he assaulted Mr. Kuligsoki, plaintiffs' remaining claim in this lawsuit is unsustainable.[7]

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 26.    **REIBER, C.J., dissenting.**   Grandparents may not have elected to exercise their right to control the means and methods of their son's work as property manager of their apartment building, but that is not the test.  The test is whether they had a right to control his work.  The nature of the relationship strongly suggests that they did.  At minimum, particularly given the inferences inherent in the relationship suggesting a right to control, it is for the jury, not this Court, to make that determination.  Because I disagree with the majority's determination as a matter of law that no employer-employee relationship existed between grandparents and father, and because I would also hold that the trial court erred by not allowing the jury to determine the foreseeability of the nature of the harm resulting from father bringing Evan to the work site, I respectfully dissent.

¶ 27.    As the majority acknowledges, when determining whether a worker is an employee or an independent contractor in tort cases, we have applied the common-law "right to control" test. RLI Ins. v. Ag. of Transp., 171 Vt. 553, 554, 762 A.2d 475, 477 (2000) (mem.).  Under that test,

_____

[7] Despite acknowledging that their only remaining claim against grandparents is one of indirect liability under the doctrine of respondeat superior, plaintiffs also suggest in their brief that grandparents may have some liability pursuant to Restatement (Second) of Torts § 324 (1965), under which an actor may owe a duty of reasonable care to a third person when the actor undertakes services to another knowing that those services will reduce the risk of harm to that person.  Nothing in the record suggests that grandparents agreed to undertake services to anyone with respect to Evan.

an employer-employee relationship is established "[i]f the party for whom the work is being done may prescribe the result, means and methods by which the other shall do the work." Id. (emphasis added); see Restatement (Third) of Agency § 7.07(3) cmt. f (2006) ("For purposes of respondeat superior, an agent is an employee only when the principal controls or has the right to control the manner and means through which the agent performs work." (emphasis added)); see also Restatement (Second) of Agency § 2(2) (1958) ("A servant is an agent employed by a master to perform service in his [or her] affairs whose physical conduct in the performance of the service is controlled or is subject to control by the master." (emphasis added)).

¶ 28.   It is difficult for me to imagine a stronger case of a right to control than the instant situation, where the parents are the owners/landlords of an apartment building and their son is the local property manager acting on their behalf in the operation of the building and dealings with the tenants.   In discussing the rationale for making masters vicariously liable for the torts of their servants acting within the scope of employment, the Restatement notes that historically "the servant was a member of the family or of the mercantile household" and that "intimacy of relation is still the basic idea which today distinguishes the servant from the non-servant."   Restatement (Second) of Agency § 219 cmt. a.   The Restatement further reasons as follows:

> [I]t may be said that a servant is an agent standing in such close relation to the principal that it is just to make the latter respond for some of his physical acts resulting from the performance of the principal's business.
>
> The conception of the master's liability to third persons appears to be an outgrowth of the idea that within the time of service, the master can exercise control over the physical activities of the servant.   From this, the idea of responsibility for the harm done by the servant's activities followed naturally.   The assumption of control is a usual basis for imposing tort liability when the thing controlled causes harm.

Id. (emphasis added).

¶ 29.   A jury could certainly make such an assumption in this case, where the son is managing his parents' rental property.   Indeed, discussing the Restatement factors, we have stated

13

that "[i]f the work is neither ancillary nor independent of the employer's business, it is likely that the worker is an employee." RLI Ins., 171 Vt. at 555, 762 A.2d at 478; see Restatement (Second) of Agency § 220(2) cmt. i ("[I]f the occupation is one which ordinarily is considered as a function of the regular members of a household staff or incident of the business establishment of the employer, there is an inference that the actor is a servant."); id. cmt. l ("If the work is done upon the premises of the employer with his machinery by workmen who agree to obey general rules for the regulation of the conduct of employees, the inference is strong that such workmen are the servants of the owner, and this inference is not necessarily rebutted by the fact that the workmen are paid by the amount of work performed or by the fact that they supply in part their own tools or even their assistants.").

¶ 30.    The majority dutifully states that the determination of the relationship is normally a jury question, see id. cmt. c, and that plaintiffs as the nonmoving party are given the benefit of all favorable inferences with respect to grandparents' summary judgment motion, but it fails to apply these principles here.  Cf. LeClair v. LeClair, 2017 VT 34, ¶ 40, ___ Vt. ___, 169 A.3d 743 (reversing grant of summary judgment regarding existence of employer-employee relationship, given "the presence of contradictory factors, the limitations and factual conflicts in the summary judgment record, and the range of inferences that could be drawn from the factual statements").  Indeed, in my view, the majority is applying inferences against plaintiffs in finding no employer-employee relationship as a matter of law.

¶ 31.    Grandparents own the apartment building as a money-making venture.  They paid their son a monthly management fee for an open-ended time period to manage the property by interacting with the tenants and keeping the rental units operational.  Father obtained permission from grandparents before doing any work on the property.  To accomplish that work, father at times brought family members, including Evan, onto the property to work for pay.  Grandparents were aware of this and left the hiring and supervision of workers on the property to father.  These

14

basic facts were sufficient to leave for the jury the question of whether an employer-employee relationship existed between grandparents and father. A reasonable jury could reasonably infer from these facts that grandparents had the right to control the means and methods of father's work at their apartment building, so as to make them potentially liable for father's conduct in hiring and/or supervising Evan on the property.

¶ 32. Finally, although I do not need to get into detail in the context of this dissent, I would reverse the superior court's summary judgment ruling because, in addition to disagreeing with the majority's holding here, I believe that the trial court erred by determining as a matter of law that the nature of the harm in this case was not foreseeable. I would adopt the American Law Institute's view that foreseeability is primarily a consideration in determining whether a duty has been breached or whether the defendant's conduct proximately caused the harm—both of which are ordinarily factual determinations within the purview of the jury. See Restatement (Third) of Torts: Physical & Emotional Harm § 7 cmt. j (2010) (stating that proper role for foreseeability is not in determining whether duty exists, which is purely legal question regarding whether to impose liability in category of cases, but rather in making factual determination as to whether duty was breached); see, e.g., Gibson v. Kasey, 150 P.3d 228, 231 (Ariz. 2007) (adopting position stated in Restatement (Third) of Torts § 7); Thompson v. Kaczinski, 774 N.W.2d 829, 834-35 (Iowa 2009) (same); A.W. v. Lancaster Ct.y Sch. Dist. 0001, 784 N.W.2d 907, 914-18 (Neb. 2010) (same); see also LeClair, 2017 VT 34, ¶ 10 (citing Restatement (Third) of Torts: Physical & Emotional Harm § 7 for proposition that "whether a duty is owed is primarily a legal question in which the Legislature or courts 'apply general categorical rules' establishing or withholding liability"); Baisley v. Missisquoi Cemetery Ass'n, 167 Vt. 473, 480, 708 A.2d 924, 928 (1998) (stating that where there is no settled rule of diligence, "negligence is ordinarily a question for the jury").

¶ 33. The parties in this case submitted conflicting facts with multiple possible inferences regarding the foreseeability of the harm. Given the conflicting facts, the jury should have been

allowed to consider questions surrounding the foreseeability of the harm, which require factual determinations as to breach of duty and/or proximate cause rather than a legal determination of duty. Accordingly, I respectfully dissent.

 

_____

Chief Justice