Vermont Superior Court
Filed 09/10/25
Caledonia Unit

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-04564

---

**Harold Eastman, Jr. et al v. Roger Morrill et al**

---

## ENTRY REGARDING MOTION

Title:      Motion for Judgment on the Pleadings (Motion: 7)
Filer:      David R. Bookchin
Filed Date: April 04, 2025

Pending before the court is plaintiffs' motion for judgment on the pleadings. For the reasons set forth below, the motion is GRANTED IN PART.

### Background

Plaintiffs Harold Eastman, Jr., and Anita Guillotel inherited a property located at 50 Shadow Lane in St. Johnsbury from their father Harold Eastman, Sr., who died in December 2022. Harold Sr. previously lived in the Shadow Drive property but had moved into a senior care facility before to his death.

In early 2022, while Harold Sr. still owned the property but was no longer living there, defendants Roger Morrill and Lisa Smith were facing the loss of their rental housing in New Hampshire. Anita and Lisa connected on Facebook and engaged in extensive communication over Facebook Messenger between February and June 2022. Through this communication, an understanding was reached under which defendants would move to the then-vacant Shadow Drive property and help clean it up in anticipation of eventually purchasing the property. No rent would be charged in the interim. Although the parties discussed entering a formal agreement, none was ever signed. Despite the lack of a formal agreement, the court finds the parties agreed to the following terms: (1) defendants could have possession of the property on a temporary basis; (2) defendants would not be charged rent; and (3) defendants would renovate the property in anticipation of purchasing the property, and their expenses would be credited against the final purchase price. The parties never executed a formal written agreement.

There is no allegation that defendants ever communicated with Harold Sr. about the property. The parties agree that plaintiffs have owned the property outright since at least Harold Sr.'s death in December 2022.

After Harold Sr. died, plaintiffs entered into an agreement to sell the property to a third party. On July 24, 2023, plaintiffs served defendants with a notice of termination asking them to vacate the premises by August 28 on account of the pending property sale. The same day, plaintiffs also sent a "no cause" termination letter informing defendants that their termination will terminate on September 26, 2023.

Plaintiffs did not give defendants an opportunity to purchase the property or offer to compensate them for their expenses or labor that defendants incurred to repair and renovate the property.

Plaintiffs filed this complaint on October 31, 2023, seeking a writ of possession. As amended, the complaint also seeks damages. Defendants answered the complaint and filed counterclaims for quantum meruit, unjust enrichment, fraud in the inducement, wrongful termination, breach of contract, anticipatory breach of contract, and infliction of emotional distress

Plaintiffs now move for judgment on the pleadings, arguing that they are entitled to immediate possession of the property and that all of defendants' claims fail as a matter of law. Defendants oppose the motion.

## Analysis

Judgment on the pleadings is appropriate when "the movant is entitled to judgment as a matter of law on the basis of the pleadings." *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 2022 VT 45, ¶ 17, 217 Vt. 195 (quotation omitted). The court must assume "all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are true and all contravening assertions in the movant's pleadings" are false. *Id.* "The standard for granting a motion for judgment on the pleadings is an exacting one" and should only be granted "if the plaintiff's pleadings contain no allegations that if proven would permit recovery." *Id.*

### I. Plaintiff's claim for possession and damages

Plaintiffs are currently occupying the property pursuant to the 2022 Facebook Messenger agreement between Anita and Lisa.

The agreement is best understood as a "contract for deed." The Vermont Supreme Court has explained:

> A contract for deed is an agreement in which a prospective purchaser occupies the premises and makes payments until the point of delivery of the deed and execution of the mortgage. Such contracts are bilateral: both parties have duties to which they have already agreed and cannot choose not to perform without breaching the contract.

> A second important characteristic of a contract for deed is that the payments under such an agreement are applied to the purchase obligation as they

accumulate. Therefore, under a contract for deed, there is an accumulation of an equitable interest in the property that deserves recognition even without the execution of a formal mortgage instrument.

*Kellogg v. Shushereba*, 2013 VT 76, ¶ 15, 194 Vt. 446. Here, the parties agreed that defendants would occupy the property and make payments, in the form of improvements to the property, until the parties executed a purchase agreement and, presumably, a mortgage. The parties further agreed that defendants' "payments," i.e. their expenses and labor toward improving the property, would be applied toward defendants' eventual purchase obligation.

As in *Kellogg*, however, the parties' agreement—which was a "contract for the sale of lands"—was subject to the Statute of Frauds and was therefore required to be signed and in writing in order to be enforced. *See id.* (citing 12 V.S.A. § 181). The court concludes that the Statute of Frauds precludes either party from enforcing the Facebook Messenger agreement between Anita and Lisa. The parties' pleadings allege that the property was owned by Harold Sr. when the agreement was made and there is no writing signed by Harold Sr. ratifying the agreement or authorizing Lisa to act as his agent. *See* Compl. ¶ 1; Answer ¶ 1; Counterclaim ¶¶ 6, 41; *Stonewall of Woodstock Corp. v. Stardust 11TS, LLC*, 2018 VT 79, ¶ 24, 208 Vt. 97 ("Authorization to execute such a contract on behalf of another shall be in writing." (quoting 12 V.S.A. § 181(5)); *Dunbar v. Farnum*, 109 Vt. 313, 324 (1937) ("For, while a subsequent ratification is as good as a previous authorization . . . the law requires that a ratification in such a case shall be in writing.").[1] In any event, the Facebook Messenger communications between Anita and Lisa leave many key terms unaddressed, including when defendants' purchase was expected to take place, how a purchase price would be determined, and the conditions under which either party could withdraw from the agreement or the consequences for such a withdrawal. *See, e.g.*, *Sweet v. St. Pierre*, 2018 VT 122, ¶ 13, 209 Vt. 1 (no enforceable contract existed where "the parties never reached agreement on a key term").

In the absence of a binding agreement setting forth the terms of defendants' occupancy, the court concludes that this case should be "properly viewed as a common law action for ejectment governed by 12 V.S.A. § 4761, with such 'damages' as would be due under 12 V.S.A. § 4765," as "measured by the rental value of the premises" and any other "gains prevented" or "losses sustained." *Kellogg*, 2013 VT 76, ¶ 23 (quoting *Sabourin v. Woish*, 117 Vt. 94, 99 (1952)).

---

[1] Defendants attached a quitclaim deed to their opposition memorandum purportedly showing that Harold Sr. conveyed the property to plaintiffs in 2015 subject to his reserved life estate. The court cannot consider this document on a motion for judgment on the pleadings. In any event, under the deed, Harold Sr. reserved the "sole right . . . to sell . . . and lease" his reserved interest to live in and occupy the property during his lifetime.

On the issue of possession, the pleadings establish that defendants retain no lawful right to occupy the property given the unenforceability of the Facebook Messenger agreement, plaintiffs' undisputed current ownership of the property, and plaintiffs' repeated requests that defendants vacate the property. Plaintiffs are accordingly entitled to judgment on the issue of possession. The clerk shall issue a writ of possession. *See* 12 V.S.A. §§ 4761, 4854.

On the issue of damages, the parties' Facebook Messenger agreement remains relevant. "Unenforceability under the Statute of Frauds does not render an agreement void" and will not "prevent recovery based on unjust enrichment, rather than breach of contract." *See Kellogg*, 2013 VT 76, ¶ 19. Accordingly, plaintiffs' right to recover damages will be guided by general equitable principles including principles of unjust enrichment. *See id.*, ¶¶ 22-24. Given the disputed allegations on what damages, if any, are recoverable by either side, plaintiffs are not entitled to judgment on the pleadings on this issue.

## II. Defendant's counterclaims

Given the discussion above, the court concludes that plaintiffs are entitled to judgment on the pleadings on defendants' counterclaims for breach of contract and anticipatory breach of contract but not on defendants' equitable counterclaims for quantum meruit and unjust enrichment. These latter claims are disputed and properly alleged against both plaintiffs as co-owners of the property.

With respect to the fraud counterclaim, to survive preliminary dismissal, the claim must allege five elements with particularity: "(1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party act[ed] in reliance on that fact; and (5) is thereby harmed." *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 13, 200 Vt. 465. Here, defendants allege that plaintiffs falsely promised they were preparing legal paperwork, and in fact had signed paperwork, formalizing the parties' agreement; that plaintiffs knew these promises were false when made; that plaintiffs made these promises to induce defendants to move to and improve the property; that defendants relied on these promises in moving to the property and spending time and labor to improve the property; and that defendants were financially harmed because of this reliance. These allegations are supported by the Facebook Messenger correspondence between Anita and Lisa. Accordingly, the court concludes that defendants have stated a fraud claim against Anita. In the absence of any alleged statements made by Harold Jr., however, the court concludes the fraud claim against him must be dismissed.

Defendants' counterclaim for wrongful termination alleges that plaintiffs deemed defendants caretakers of the property for reasons related to Medicare and Medicaid requirements, and by so doing, employed defendants; that plaintiffs wrongfully terminated

defendants' employment to avoid compensating defendants; and that plaintiffs are therefore liable to plaintiffs for lost wages under 21 V.S.A. § 342.

Section 342 of Title 21 provides that "[a]ny employer that is doing business within the State shall pay each week, in lawful money or checks, the wages earned by each employee to a day not more than six days prior to the date of payment." 21 V.S.A § 342(a). The statute further provides that an employee who "is discharged from employment shall be paid within 72 hours of discharge." 21 V.S.A. § 342(b)(2). An "employer" is defined as "any person that employs one or more individuals," and "employee" is defined—subject to certain exceptions—as "an individual who has entered into the employment of an employer." 21 V.S.A. § 341. The term "employment" is not specifically defined under statute. For the purpose of a tort claim, Vermont courts generally look first to the "right to control" test to determine whether an employment relationship exists. *Kuligoski v. Rapoza*, 2018 VT 14, ¶ 15, 207 Vt. 43. "Under that test, a worker is an employee if the party for whom work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work." *Id.* (quotation omitted). In close cases, courts also look to other factors including "whether the worker is engaged in a distinct occupation, whether the kind of occupation engaged in is usually done under the direction of an employer, the skill required, whether the worker supplies the tools for the work, the length of time the worker is employed, whether payment is by time or by the job, whether the work is part of the regular business of the principal, whether the parties believe they are creating an employer-employee relationship, and whether the principal is or is not in business." *Id.* (citing Restatement (Second) of Agency § 220(2)(a)-(j)). Considering those factors here, the pleadings provide no basis to conclude the parties entered into an employment relationship. Rather, as discussed above, they entered into an (unenforceable) contract for deed under which defendants agreed to occupy the property, perform improvements, and be credited the cost of those improvements against an eventual purchase price. Plaintiffs are entitled to judgment on the pleadings on defendants' wrongful termination claim.

Finally, the court also concludes that plaintiffs are entitled to judgment on the pleadings on defendants' counterclaim claim for emotional distress. To sustain such a claim, defendants "must show [plaintiffs] engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395 (quotation omitted). Defendants' "burden on this claim is a 'heavy one' as [they] must show [plaintiffs'] conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Id.* (quotations omitted). The allegations here fall short of the mark. While the alleged conduct suffices to state claims for unjust enrichment and fraudulent

inducement, as explained above, it does not establish the degree outrageousness necessary to sustain a claim for intentional infliction of emotional distress.

## Order

The motion for judgment on the pleadings is GRANTED IN PART.

Plaintiffs are entitled to judgment on the issue of possession, and on defendants' counterclaims for breach of contract, anticipatory breach of contract, wrongful termination, intentional infliction of emotional distress, and fraudulent inducement against Harold Eastman, Jr.

Plaintiffs are not entitled to judgment on their claim for damages, or on defendants' counterclaims for quantum meruit, unjust enrichment, and fraudulent inducement against Anita Guillotel.


Electronically signed on: 9/8/2025 pursuant to V.R.E.F. 9(d)


_____
Benjamin D. Battles
Superior Court Judge